787 P.2d 835

Henry PADILLA, Virginia Padilla, indi-
vidually and as next friend of Christina
Padilla, a minor, Plaintiffs–Appellees,

v.

DAIRYLAND INSURANCE COMPANY,
Defendant–Appellant.

No. 18575.

Supreme Court of New Mexico.

Feb. 26, 1990.

Butt, Thornton, & Baehr, P.C., David M.
Bhouliston and John A. Klecan, Albuquer-
que, for defendant-appellant.

Thomas C. Esquibel and William A. San-
chez, Los Lunas, for plaintiffs-appellees.

William H. Carpenter and Michael B.
Browde, Albuquerque, for amicus curiae,
NM Trial Lawyers Ass'n.

## OPINION

SOSA, Chief Justice.

Defendant-appellant, Dairyland Insur-
ance Company (Dairyland), appeals a sum-
mary judgment granted to plaintiffs-appel-
lees, Henry and Virginia Padilla, who had
filed suit individually and as next friend of
Christina Padilla, their daughter and mem-
ber of their household. Christina was in-
jured to the extent of more than $100,000
in a one-car automobile accident. The ve-
hicle involved was owned by Henry Padilla
and driven by Christina's sister, Florence,
who was killed in the accident. Henry
Padilla was the named insured of an insur-
ance policy sold to him by Dairyland cover-
ing the accident vehicle up to $25,000 for
bodily injury liability, and up to an addition-
al $25,000 for uninsured/underinsured mo-
torist protection. Florence was a named
insured under the liability provision of the
policy and was also a member of the Padil-
la household. Christina, as a passenger
and member of the household, was insured
under the uninsured/underinsured motorist
provision of the policy. Henry Padilla sim-
ilarly had insured two other vehicles he

owned. All three vehicles were covered by a single Dairyland policy.

Dairyland conceded it owed Henry Padilla $25,000 under the liability coverage, but denied that it owed him anything under the uninsured/underinsured motorist coverage. The Padillas filed suit, seeking to stack the benefits under the uninsured/underinsured motorist coverage for all three cars, arguing that the negligent driver, Florence, was underinsured. The trial court agreed with the Padillas. It permitted them to stack their coverage, deducted $25,000 for the liability payment Dairyland had already made, and awarded the Padillas $50,000. On appeal, Dairyland argues that the trial court in effect used the uninsured/underinsured motorist provisions of the policy to increase the liability limit on the accident vehicle to $75,000, thereby ignoring the contract entered into between the parties. Dairyland also points to an exclusion in the policy which reads as follows: "A motor vehicle owned by [Mr. Padilla] or furnished for [Mr. Padilla's] regular use isn't an uninsured motor vehicle [under the policy]."

The Padillas argue that under our prior holdings on stacking of uninsured/underinsured coverage, the exclusionary language in the policy should be invalidated as contrary to public policy. We frame the issue before us as a tripartite question: (1) Does the uninsured/underinsured motorist coverage on a vehicle owned by the named insured entitle an insured family member to recover for an accident involving the insured vehicle, as opposed to a vehicle owned by a third party, when the insurance policy attempts to exclude coverage for any vehicle owned by the named insured? (2) If the insured family member is otherwise entitled to recover, may she recover when the negligent driver was also an insured family member? (3) If the answer to the first two questions is yes, may the named insured stack benefits available to him under the uninsured/underinsured motorist coverage for two other vehicles covered by the same policy?

This is not an issue of first impression. Rather, it is an issue with which we were once presented but failed to resolve. In

*Estep v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 105, 703 P.2d 882 (1985), we were faced with a similar factual situation. Appellant was injured in an automobile accident in which her husband was the driver and owner of the accident vehicle and which was caused by the husband's negligence. One of the issues raised on appeal was whether appellant could recover under the insurance policy's uninsured motorist coverage. In reversing a summary judgment for the insurance company on other grounds, we stated, as to the issue of possible benefits under the uninsured motorist coverage of the policy:

> We need not at this time decide [appellant's] alternative argument that ... in some instances a plaintiff in the circumstances of [appellant] might be able to claim coverage for damages under the "uninsured motorist" provisions of her husband's policy. Suffice it to say that the legislature clearly expressed its purpose in [NMSA 1978, Section 66–5–201.1]:
>
>> The legislature is aware that motor vehicle accidents in the state of New Mexico can result in catastrophic financial hardship. The purpose of the Mandatory Financial Responsibility Act [NMSA 1978, Sections 66–5–201 to –239] is to require and encourage residents of the state of New Mexico who own and operate motor vehicles upon the highways of the state to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle. It is the intent that the risks and financial burdens of motor vehicle accidents be equitably distributed among all owners and operators of motor vehicles within the state.
>
> The courts are obliged to accede to the legislative purpose in applying the statutory law governing mandatory insurance.

*Id.* at 111, 703 P.2d at 888. We note that the quoted statute is identical to NMSA 1978, Section 66–5–201.1 (Repl.Pamp.1989), the law presently in effect.

We need not make an exhaustive review of our holdings in this area of the law. Instead, a brief summary of the direction in

which those holdings have evolved will suffice. In *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 533 P.2d 100 (1975), we held that the uninsured motorist statute must be liberally construed to implement its purpose of compensating those injured through no fault of their own. We invalidated an insurance policy's exclusionary clause that we found to be in conflict with the statute's purpose.

■ We are mindful here of our holding in *State Farm Auto. Ins. Co. v. Kiehne*, 97 N.M. 470, 641 P.2d 501 (1982), wherein we held valid an unambiguous exclusionary clause stating that uninsured motorist benefits were not available for damage sustained while any motor vehicle was being driven by the named insured. The distinction between *Kiehne* and *Chavez* lies in the nature of the exclusions in each case. In the former, the insurer excluded *all* coverage if Mr. Kiehne were the driver, while in the latter the insurer provided coverage to Mr. Chavez and then limited it. Thus *Kiehne* and *Chavez* stand for the proposition that an insurer's decision not to contract at all with a given person is allowable, while an insurer's contract entered into with a given person cannot be limited except where permitted by statute or regulation.

In *Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 646 P.2d 1230 (1982), we held that an insured must be permitted to stack uninsured motorist coverages for separately owned vehicles where an insurance company charges a full premium for each vehicle. In *Konnick v. Farmers Ins. Co. of Arizona*, 103 N.M. 112, 703 P.2d 889 (1985), we extended our ruling in *Lopez* to underinsured motorist protection and clarified the classes of insureds who may be covered under uninsured motorized provisions. Class I insureds (household members) are entitled to stack benefits under such policies, while Class II insured (third-party passengers) are not. In *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092 (1985), we held invalid an ambiguous exclusionary clause in an insurance policy that would have prevented the insured from stacking two policies providing underinsured motorist coverage. We held that:

> [T]he only limitations on protection are those specifically set out in the statute itself: that the insured be legally entitled to recover damages and that the negligent driver be uninsured * * * * In the context of underinsured motorist protection, a subcategory of uninsured motorist coverage, the requirements are that the insured be legally entitled to recover damages and that the negligent driver be inadequately insured.

Id. at 219, 704 P.2d at 1096.

In *Jimenez v. Foundation Reserve Ins. Co.*, 107 N.M. 322, 757 P.2d 792 (1988), we extended our ruling in *Schmick* to an exclusionary clause that was not ambiguous, holding that:

> Even though [the insurer's] liability limitation clause is unambiguous, that is not determinative.
>
> . . . .
>
> [W]hen public policy embraces the stacking concept, policy language limiting recovery to one vehicle's coverage (although premiums have been paid on more than one vehicle) shall be struck as null and void no matter how clear and unambiguous the limiting language.
>
> . . . .
>
> The trial court correctly determined that [the insured] could stack his policies to establish whether the negligent driver was underinsured. Because [the insured] had $50,000 in underinsured/uninsured motorists coverage and the negligent driver had only $25,000, the driver was underinsured to the extent of $25,000. [The insured] was entitled to recover $25,000 from [the insurer].

107 N.M. at 324–326, 757 P.2d at 794–796.

We note that the facts of coverage in *Jimenez* are the same as in the case before us, except that in the instant case the "negligent driver" is from the same family as the injured insured and was driving a vehicle owned by the named insured. The driver in the case at bar was likewise underinsured.

In *Sanchez v. Herrera*, 109 N.M. 155, 783 P.2d 465 (1989), we considered a case

involving stacking of payments under the medical coverage provision of an automobile insurance policy. We agreed with the insurance company that the stacking of uninsured motorist benefits is "distinguishable from the [stacking of medical payments] because the legislature mandated uninsured motorist coverage in NMSA 1978, Section 66–5–301(B) [Repl.Pamp. 1989], whereas medical coverage exists only by virtue of contracts freely entered into between the insured and [the insurer]." *Id.* at 158, 783.P.2d at 468. In *Sanchez,* because the important public policy issues raised by the uninsured motorist statute were not involved, we "resort[ed] to traditional methods of contract interpretation to assist our resolution of [the issue of stacking]." *Id.* In doing so, we upheld the insurance policy's exclusionary clause as binding and prohibitive of stacking.

The case at bar, however, is of a different species than *Sanchez.* It falls within the parameters of our holdings in *Jimenez* and its predecessors cited above, rather than within the parameters of rulings based on "traditional methods of contract interpretation" referred to in *Sanchez.* It is clear that cases involving uninsured motorist coverage must be given a qualitatively different analysis by this court than cases which do not involve such coverage. With that in mind, we now analyze the case before us, as argued by the parties on appeal.

We turn first to the authority cited by Dairyland. In *Myers v. State Farm Mut. Auto. Ins. Co.,* 336 N.W.2d 288 (Minn. 1983), plaintiff-appellant had brought suit against the insurer seeking underinsurance benefits following a one-car accident in which the fatally injured person was a guest passenger and the accident vehicle was both owned and driven by someone not related to him. Further, unlike the situation in the case before us, the injured person was not a listed insured under the policy covering the accident vehicle. The policy endorsement for underinsured motorist coverage provided that any person occupying the covered vehicle was entitled to recover benefits under the underinsured motorist provision of the policy. At the same time, however, the policy excluded coverage for any vehicle owned by or furnished for the regular use of the owner or driver of the accident vehicle, and thus served to exclude the accident vehicle as a covered vehicle.

Appellant argued that underinsurance coverage follows the person and not the car, and sought benefits under the policy. The court affirmed judgment for the insurer, holding:

> The purpose of underinsured coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile. Ordinarily, a passenger injured in a one-car accident involving *someone else's car,* such as here, would be able to recover underinsured motorist benefits under his or her own underinsured motorist coverage. Decedent Myers, however, did not own a car and consequently had no coverage. But * * * [the] insurance policy [of the person who owned the accident vehicle] is not designed to compensate [the owner of the accident vehicle] or his additional insureds from [his] failure to purchase sufficient liability insurance.
>
> . . . .
>
> We hold, therefore, that the policy definition of "underinsured motor vehicle," which excludes a vehicle owned by or furnished or made available for the regular use of the named insured is valid.

*Id.* at 291–92 (emphasis added).

A similar conclusion was reached by the Supreme Court of Iowa in a factual situation equivalent to the Minnesota case just cited. In *Poehls v. Guaranty Nat'l Ins. Co.,* 436 N.W.2d 62 (Iowa 1989), the court ruled: "[T]o allow [the insured party] to recover for [the driver's] negligence * * * would in effect amount to a duplicate payment of liability benefits." *Id.* at 64.

The Iowa court relied on *Millers Casualty Ins. Co. v. Briggs,* 100 Wash.2d 1, 665 P.2d 891 (1983). In that case, again based on a one-car accident involving an injured party neither related to the insured driver

nor listed as an insured in the policy covering the accident vehicle, a policy exclusion similar to the one in *Myers* was in effect. Interpreting the Washington statute which requires automobile insurers to offer potential clients the option of purchasing underinsured motorist coverage, the court rejected the injured party's claim that since the statute did not expressly permit an insurer to exclude a vehicle owned by the named insured from underinsured motorist coverage, the exclusion was invalid. The court also rejected the injured party's public policy argument, in which it was asserted that the state's policy of providing compensation to innocent victims of automobile accidents required an invalidation of the exclusion. The court noted that the injured party in such a situation as the one before it (1) has not paid a premium to the insurer, (2) because of benefits available under liability coverage on the accident vehicle is not without compensation, and (3) can recover under underinsured motorist provisions of any policy he or she may own.

The Supreme Court of Alabama has adhered to the reasoning of the courts in the three cases just reviewed. In *Sullivan v. State Farm Mut. Auto Ins. Co.*, 513 So.2d 992 (Ala.1987), the court approved a policy exclusion similar to the ones in the cases reviewed above and similar as well to the one in the case before us. The court upheld a judgment denying coverage for a guest passenger who had sought benefits under the underinsured motorist provision of the driver's policy. In so holding, the Alabama court relied on *Millers Casualty* and on an Arizona case that, in its factual setting, is on all fours with the case at bar: *Preferred Risk Mut. Ins. Co. v. Tank*, 146 Ariz. 33, 703 P.2d 580 (Ct.App.1985).

The latter case differs from the other cases we have discussed in that it involved injured parties who *were* named insureds under the policy covering the accident vehicle. The injured parties were also related to the negligent driver. The Arizona court upheld the validity of an exclusion clause similar to the one before us now. The court found the clause consistent with a statute requiring insurers to offer underin-sured motorist coverage to the public. The court reasoned:

> When operation of the insured vehicle causes an injury, liability coverage is available to the injured party. By refusing to pay underinsured motorist benefits in addition, that type of coverage is limited to the situation for which it was created—compensation for injuries caused by *other* motorists who are underinsured. Thus, although the statute lacks specific terms permitting the exclusion, we find it consistent with the legislative purpose.

*Id.* at 36, 703 P.2d at 583 (emphasis added).

The crucial distinction between the Arizona case, on the one hand, and the cases from Minnesota, Iowa, Washington and Alabama, respectively, on the other hand, is that in the latter each injured party attempted to recover under someone else's underinsured motorist coverage, while in the former, as in the case at bar, the injured party, is attempting to recover under her *own* underinsured motorist coverage.

Because of the classification system we have erected in prior holdings, Christina Padilla falls into the category of Class I insureds, rather than Class II insured.

> [Class I] insureds generally "are covered by policies no matter where they are *or in what circumstances they may be;* coverage is not limited to a particular vehicle." [*Gamboa v. Allstate Ins.* 104 N.M. 756, 758, 726 P.2d 1386, 1388 (1986)]. "[S]econd class insureds are covered only because they occupy an insured vehicle." *Id.* Class one insureds "may stack all uninsured/underinsured motorist policies purchased by the named insured since the policies were obtained specifically to benefit the name insured and members of his family." *Schmick*, 103 N.M. at 220, 704 P.2d at 1096. Class two insureds, however, "are restricted to recovering under the policy on the car in which they rode because the purchaser of the policy only intended occupants to benefit from that particular policy." *Id.*

*Morro v. Farmers Ins. Group*, 106 N.M. 669, 671, 748 P.2d 512, 513 (1988) (emphasis added).

The Padillas argue that the distinction between, on the one hand, a guest passenger who has neither paid a premium to the insurer nor who is an insured under the policy at issue, and, on the other hand, an actual insured under the policy, should be determinative. The crucial difference, the Padillas argue, is that in the latter case the injured party has a contractual relationship with the insured along with an attendant reasonable expectation of coverage. *See Wolgemuth v. Hurleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145, 1149–50 (1988). The Padillas assert that the result reached in *Tank* is illogical and contrary to the public policy of New Mexico. And since Christina Padilla should be allowed to recover, the Padillas argue, she should also be allowed to stack coverage for the other two insured vehicles. *See Lopez, Schmick, Morro.*

■ The first question we must answer, therefore, is whether Dairyland's exclusion clause is invalid as violative of public policy. In deciding this question, we are faced with our holding in *Willey v. Farmers Ins. Group*, 86 N.M. 325, 523 P.2d 1351 (1974). In that case the insurance policy contained an exclusion clause virtually identical to the one before us. We held that the clause was clear and unambiguous in excluding the insured's car from uninsured motorist coverage. In rejecting the insured's public policy argument, we looked to NMSA 1953, Section 64–24–105 (1972), then equivalent to the present NMSA 1978, Section 66–5–301 (Repl.Pamp.1989). We ruled:

> It appears to us that this statute neither authorizes nor forbids the exclusion contained in the policy sued upon, nor does it define "uninsured motor vehicles." However, the statute does provide that the superintendent of insurance may promulgate rules and regulations which govern uninsured motorists. Acting under this statutory authorization, the superintendent of insurance has published rules that cover the subject * * * [which provide] that the term "uninsured motor vehicle" shall not include a "motor ve-

> hicle owned by * * * [the insured] * * * * ."

*Id.*, at 326–27, 523 P.2d at 1352–53.

Present law still contains language pertaining to the role of the superintendent of insurance in carrying out the purpose of the legislature in enacting the statute on uninsured motorist coverage. *See* NMSA 1978, § 66–5–301(A). And the present regulations of the New Mexico Department of Insurance provide that the term "insured motor vehicle," for purposes of determining benefits under uninsured motorist coverage, "shall not include * * * a motor vehicle owned by the [insured] or by any resident of the same household of such insured * * * or a motor vehicle furnished for the regular use of the [insured] or any resident of the same household." N.M. Ins. Dep't Reg., Art. 5, Ch. 66, Rule 1, § 5–1–2, at 266 (Rev.1989).

Were *Willey* still good law, we would of necessity have to rule that the exclusion here should be enforced as written. Very recently, however, in *Foundation Reserve Ins. Co. v. Marin*, 109 N.M. 533, 787 P.2d 452 (1990) we explicitly overruled *Willey*. In doing so, we have concluded the better course to follow is that laid out by *Chavez* and its progeny rather than the policy implications underlying our decision in *Willey*. We disavow *Willey* notwithstanding any regulation promulgated by the New Mexico Department of Insurance. Accordingly, the rule in *Willey* having been abolished, we hold that the exclusion before us is void as violative of public policy. Further, we agree with the Padillas that the Arizona Court of Appeals' ruling in *Tank* is not applicable in New Mexico, because our reading of public policy as mandated by our legislature requires a different result than reached by the court in *Tank*.

We thus answer the tripartite question raised by the parties on appeal as follows: (1) An insured family member is entitled to recover for an accident involving the insured vehicle, as opposed to a vehicle owned by a third party, even though the insurance policy attempts to exclude coverage for any vehicle owned by the named

insured; (2) the insured, injured family member is entitled to recover even though the negligent driver was also an insured family member; (3) the named insured may stack benefits available to him/her under the uninsured/underinsured motorist coverage for other vehicles covered by the same policy. We thus affirm the judgment of the trial court in its entirety.

IT IS SO ORDERED.

BACA, J., concurs.

MONTGOMERY, J., concurs in result only.