848 P.2d 527

**MOUNTAIN STATES MUTUAL CASU-
ALTY COMPANY, Plaintiff–Coun-
ter–Defendant–Appellee,**

v.

**Jacqueline MARTINEZ, Defendant–
Counter–Plaintiff–Appellant.**

**No. 20161.**

Supreme Court of New Mexico.

Jan. 6, 1993.

Rehearing Denied March 8, 1993.

Montoya, Murphy & Garcia, Donald D.
Montoya, Santa Fe, for appellant.

Modrall, Sperling, Roehl, Harris & Sisk,
Thomas L. Johnson, Albuquerque, for ap-
pellee.

OPINION

FROST, Justice.

Jennifer Roybal rear-ended a truck on
Interstate 25, and her passenger, Jacque-
line Martinez, was seriously injured. Roy-
bal had an automobile insurance policy with
Mountain States Mutual Casualty Company
(Mountain States) providing for $60,000 in
liability coverage per accident and $60,000
in uninsured/underinsured coverage per ac-
cident. Mountain States paid Martinez the
limits of Roybal's liability coverage, $60,-
000 less the $1,287 it paid to the owner of
the truck. Martinez' damages exceeded
$58,713, so she made a claim against Moun-
tain States' underinsured coverage, claim-
ing that Roybal was an underinsured driv-
er. Mountain States filed a declaratory
judgment action seeking judicial enforce-
ment of language limiting its underinsured
coverage. The limiting language reads:

2. Any amount payable under this in-
surance *shall be reduced by:*

(b) All sums paid by or for anyone who
is legally responsible, including *all
sums paid under the policy's LIA-
BILITY INSURANCE.*

(Emphasis added). Because Martinez re-
ceived liability benefits on the Mountain
States policy, this liability offset provision
would prevent Martinez from recovering
underinsured benefits on the same policy.
The trial court granted summary judgment
in favor of Mountain States, upholding the
liability offset provision. We affirm.

The issue on appeal is whether a guest
passenger should be allowed to recover for
public policy reasons under both the liabili-
ty and underinsured motorist provisions of
a negligent host driver's insurance policy,
even though a provision in the policy would
prevent the double recovery. This is an
issue of first impression in New Mexico.
Recent cases have held that the only statu-
tory conditions for recovery of underin-

142

sured motorist benefits are that (1) the insured be legally entitled to recover damages, and (2) the negligent driver be underinsured. *See, e.g., Padilla v. Dairyland Ins. Co.,* 109 N.M. 555, 557, 787 P.2d 835, 837 (1990); *Schmick v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985). Martinez contends that any additional limitations on underinsured motorist coverage are unenforceable, whether the limitation applies to a Class I named insured or to a Class II passenger insured such as herself. Under the policy in question, Class I insureds are the named insured as stated in the policy, the spouse, and relatives residing in the household, whereas Class II insureds are those persons merely occupying an insured motor vehicle. *See Konnick v. Farmers Ins. Co. of Ariz.,* 103 N.M. 112, 115, 703 P.2d 889, 892 (1985).

Mountain States notes that the statute requires an insurance company to offer underinsured coverage only to those who purchase liability insurance, or Class I insureds. It contends, therefore, that the statute was not primarily designed to protect Class II passenger insureds such as Martinez. For this reason, Mountain States claims that public policy would not protect Class II insureds like Martinez from the basic operation of contract law supporting the liability offset provision. We agree with Mountain States.

Our Uninsured Motorists' Insurance statute states in relevant part that "[n]o motor vehicle or automobile liability policy insuring against loss resulting from liability ... shall be delivered ... unless coverage is provided ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured* motor vehicles...." NMSA 1978, § 66–5–301(A) (Repl.Pamp.1989) (emphasis added). Coverage must also be provided for the protection of persons entitled to recover from owners or operators of *underinsured* motor vehicles. *Id.* at § 66–5–301(B) (emphasis added).

In *Sullivan v. State Farm Mutual Automobile Insurance Co.,* 513 So.2d 992 (Ala.1987), the Alabama Supreme Court upheld a liability offset provision applied against a Class II insured. The Alabama Court's interpretation of its similar Uninsured Motor Vehicle Coverage statute was the crucial factor in its determination. It stated that the statute was primarily designed to protect persons who purchased liability insurance for themselves and their families, Class I insureds. *Id.* at 996. It also reasoned that Class II insured passengers are insured by virtue of their host driver's underinsured provision, not by mandate of the statute. *Id.* Thus, it concluded that a Class II insured's coverage may be limited by the terms of an insurance contract without thwarting public policy. *Id.* On this basis, the Alabama Court upheld the liability offset provision before it. The Supreme Courts of Arizona and Hawaii have reached the same result when applying statutory provisions substantially identical to the uninsured motorist statute of New Mexico. *See Duran v. Hartford Ins. Co.,* 160 Ariz. 223, 772 P.2d 577, 578 (1989); *Kang v. State Farm Mut. Auto. Ins. Co.,* 72 Haw. 251, 815 P.2d 1020, 1022 (1991). We adopt the rationale of these cases.

Martinez benefitted from underinsurance coverage under Roybal's liability policy, but she was also subject to that policy's exclusionary language requiring an offset of any proceeds paid under its liability coverage against underinsured benefits. The legislature mandated that underinsured coverage be included in every automobile liability insurance policy for the protection of Class I insureds. Mountain States' policy limits the recovery of underinsured benefits by Class II insureds. The offset provision in Mountain States' policy, therefore, does not contravene public policy or run afoul of legislative intent.

Further support for our conclusion is found in *Millers Casualty Insurance Co. of Texas v. Briggs,* 100 Wash.2d 1, 665 P.2d 891 (1983), wherein the Supreme Court of Washington upheld a definition of "underinsured motor vehicle" that in effect prevented a Class II passenger insured from recovering underinsured motorist benefits

in addition to liability benefits under a negligent host driver's policy. The *Briggs* court correctly observed that not to sustain such a limitation on coverage would transform underinsured motorist insurance into liability insurance and thus create a duplication of liability benefits. The court further explained:

> This result would cause insurance companies to charge substantially more for underinsured motorist coverage in order to match the cost of that coverage with the presently more expensive liability coverage. This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimal cost.

*Id.* at 895. *Accord Poehls v. Guaranty Nat'l Ins. Co.,* 436 N.W.2d 62, 64 (Iowa 1989), *Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145, 1149, *cert. denied,* 520 Pa. 590, 551 A.2d 216 (1988).

When there are no overriding public policy considerations to the contrary, the obligations of an insurer on an underinsured motorist policy are determined by applying principles of contract law. *See March v. Mountain States Mut. Casualty Co.,* 101 N.M. 689, 691, 687 P.2d 1040, 1042 (1984). In the case at hand, Martinez' underinsured motorist coverage was unambiguously limited by the liability benefits she received under her host driver's policy. This sort of contractual limitation does not breach public policy as applied to a Class II insured like Martinez and will be enforced.

In a recent opinion of this Court, we distinguished the claimant's rights in *Briggs* on the basis of his Class II status and allowed a Class I insured to recover benefits for public policy reasons on both the liability and underinsured portions of her policy, despite an exclusion that might have prevented this dual recovery. *See Padilla v. Dairyland Ins. Co.,* 109 N.M. 555, 559, 787 P.2d 835, 839 (1990). In that case, Christina Padilla was seriously injured in a one-car accident. The vehicle was driven by Padilla's sister, an underinsured driver by statutory definition. As a member of the household, Padilla was a Class I insured on her father's policy.

In *Padilla* we discussed *Briggs* and similar cases and the concern that if Padilla recovered both liability benefits for her sister's negligent driving and underinsured benefits because the liability benefits were inadequate, underinsured coverage would in essence become liability coverage. *See id.* Nevertheless, we allowed Padilla to recover both liability and underinsured benefits on the same policy because of her Class I status, the crucial factor being that Padilla had "a contractual relationship with the insured along with an attendant reasonable expectation" of underinsured coverage. *Id.* at 560, 787 P.2d at 840. Moreover, "[Class I] insureds generally 'are covered by policies no matter where they are *or in what circumstances they may be;* coverage is not limited to a particular vehicle,'" as it is with Class II insureds. *Id.* at 559, 787 P.2d at 839 (quoting *Gamboa v. Allstate Ins. Co.,* 104 N.M. 756, 758, 726 P.2d 1386, 1388 (1986)). In other words, Padilla's father paid a premium for his daughter as a Class I insured, and consequently that coverage should follow her into any underinsured vehicle, even her own family's vehicle. Most importantly, our underinsured motorist statute was specifically designed to protect Class I insureds like Padilla, thereby preventing limitations not authorized by the statute.

None of these considerations apply to Martinez, a Class II insured. Martinez did not pay a premium to Roybal's insurer; thus, she had no contractual expectation of underinsured coverage on the policy. Accordingly, Mountain States and Roybal limited Martinez' underinsured benefits by contract without interfering in any way with Martinez' reasonable expectations. Neither did the contract limitation prohibit Martinez from receiving compensation. She received compensation in the form of liability benefits, and she will recover underinsured motorist benefits on policies on which she is a Class I insured.

In the event a passenger wishes to be protected beyond the legal liability minimum, he or she should purchase a greater

amount of underinsured motorist insurance than that statutorily prescribed. Conversely, in the event a negligent host driver wishes to be protected from personal liability, he or she should purchase a greater amount of liability insurance than that statutorily prescribed. Public policy does not mandate that we interfere with the balance of these incentives. For all of these reasons, and the fact that our underinsured motorist statute was not primarily designed to protect Class II insureds like Martinez, we affirm the trial court in giving full force and effect to the Mountain States liability offset provision.

IT IS SO ORDERED.

BACA and FRANCHINI, JJ., concur.

## ON MOTION FOR REHEARING

RANSOM, Chief Justice (specially concurring).

A motion for rehearing having been denied, I specially concur to note that, because the stacking issue that is at the foundation of this case is nowhere developed in the Court's opinion, it may appear to the reader that nothing more is involved than policy language that effects the rule in *Schmick:* any amount payable for underinsured coverage shall be reduced by all sums paid under liability insurance. The clause at the end of the penultimate paragraph, that "she will recover underinsured motorist benefits on policies on which she is a Class I insured," may be lost on the reader.

The briefs of the parties demonstrate that, as a member of the family of the named insured under policies covering vehicles owned by her parents, Martinez is a Class I insured to the extent of $75,000. The Class I and Class II coverages total $135,000. The author of the Court's opinion correctly observes that this case directly involves only the Class II coverage of $60,000. Damages suffered by Martinez exceed all policy limits, and she seeks to prorate the off-set for liability coverage and collect approximately $33,900 under the Mountain States policy after giving that coverage a 60/135th credit for the liability payment.

I am compelled to express the view that pro rata credit in cases of primary Class II and excess Class I coverage has been rejected in the very recent case of *Tarango v. Farmers Insurance Co. of Arizona,* —— N.M. ——, 849 P.2d 368 (1993). The "pro rata credit" affirmed in *Morro v. Farmers Insurance Group,* 106 N.M. 669, 673, 748 P.2d 512, 516 (1988), should be limited to concurrent insurance of the same class. In *Morro,* the Court simply found nothing unfair to the primary Class II carrier in the pro rata allocation of credit toward the liability of both the primary and excess carriers. Pursuant to *Tarango,* applying the *Schmick* formula, the aggregate amount of underinsured motorist coverage in *Morro* should have been reduced by the liability payment, and the primary Class II carrier should have paid the full amount of its $25,000 coverage before the excess Class I carrier paid the balance of the net aggregate. However, the excess Class I carrier did not question the fairness of what the trial court did in that case. Here, as in *Morro,* we must decide the question raised, briefed and argued on this appeal. We have not considered whether Martinez's Class I coverage would or would not be reduced by the liability payment that effected any reduction of Class II coverage payable under the Mountain States policy.