2000-NMCA-034

999 P.2d 412

**Phil CHAVEZ, Worker–Appellant,**

v.

**S.E.D. LABORATORIES and United States Fidelity & Guaranty Company, Employer/Insurer–Appellees.**

**No. 19,700.**

Court of Appeals of New Mexico.

·Jan. 19, 2000.

Certiorari Granted, No. 26,227, April 6, 2000.

Robert L. Pidcock, Albuquerque, for Worker–Appellant.

Paul Maestas, Wayne R. Suggett, Silva, Rieder & Maestas, P.C., Albuquerque, for Employer/Insurer–Appellees.

## OPINION

ARMIJO, Judge.

{1} Phil Chavez (Chavez) appeals the decision of the Workers' Compensation Administration (WCA) that required him to reim-

burse his employer, S.E.D. Laboratories, and its workers' compensation insurer, United States Fidelity & Guaranty Company (collectively, S.E.D./USF & G), certain benefits paid to him. Chavez sustained injuries as a result of an automobile accident. It is undisputed that Chavez' injuries were work related. In addition to seeking benefits to which he was entitled under the Workers' Compensation Act, Chavez also made a claim against the uninsured/under insured motorist policy maintained by S.E.D. Laboratories. The central question in this appeal is the extent to which S.E.D./USF & G are entitled to reimbursement and credits against future benefits. Chavez raises additional issues: whether substantial evidence supports the WCA's finding that Chavez returned to work at a wage equal to or greater than that which he earned before his injury; and whether Chavez is entitled to attorney's fees. For the reasons discussed below, we reverse the decision of the WCA as it relates to the reimbursement award and imposition of attorney's fees, and remand the matter for further proceedings. We affirm the WCA's determination regarding Chavez' wage upon returning to work.

### FACTUAL AND PROCEDURAL BACKGROUND

{2} On October 15, 1993, Chavez was involved in an automobile accident with an uninsured, third-party motorist. At that time, he worked as a courier for S.E.D. Laboratories. The parties agree that the accident arose from and occurred during Chavez' employment. Chavez pursued a workers' compensation claim. The WCA concluded that the evidence established to a reasonable medical probability that the accident caused Chavez' two lumbar disk herniations and his resulting disability.

{3} At the time of the accident, Chavez was covered by two uninsured motorist policies—one provided by his mother and the other by S.E.D. Laboratories. (Both policies were provided by insurers that are not parties to this action.) As a result of the claims made against these policies, Chavez received a gross benefits pay-out of $110,000 dollars—$50,000 from his mother's policy and $60,000

from S.E.D. Laboratories. These amounts were reduced, after paying out attorney's fees and related costs, to $32,364.58 and $38,-837.50, respectively.

{4} Chavez also received benefits under S.E.D. Laboratories' workers' compensation insurance policy with USF & G. The record indicates that as of the WCA's entry of judgment, he had received $19,886.21 in such benefits. By its action below, S.E.D./USF & G sought termination of future benefits and, due to Chavez' recovery, under S.E.D. Laboratories' uninsured motorist policy, a *pro tanto* reimbursement of benefits already paid. *See Montoya v. AKAL Sec., Inc.*, 114 N.M. 354, 355, 838 P.2d 971, 972 (1992) (recognizing an employer's right to reimbursement). Chavez' recovery upon his mother's policy is not at issue in this appeal. S.E.D./USF & G only seeks reimbursement based upon Chavez' recovery under S.E.D. Laboratories' uninsured motorist policy.

{5} As at trial, Chavez contends that he made only a partial financial recovery. The WCA, however, declined to consider the extent of Chavez' damages or whether he had been made whole. Chavez nonetheless adduced evidence at trial supporting the following claims of damages: a 70% loss of access to the labor market, a 50% loss in earning capacity, a 76% loss in his ability to perform "household services" (valued at $93,665), and lost wages (valued between $94,073 and $242,065, depending on whether calculation is based upon actual, pre-injury earnings or pre-injury earning capacity, respectively). If accurate, this evidence indicates that Chavez has suffered between $187,738 and $335,730 in damages, of which he has actually recovered only $58,723.71 through his employer-provided benefits; that is, a net of $38,837.50 in uninsured motorist coverage and $19,-886.21 in workers' compensation benefits.

{6} S.E.D./USF & G made a pretrial offer of judgment. The offer included: $11,490.90 in cash reimbursement; (2) an $8,201.70 credit against future workers' compensation benefits; (3) a provision that upon satisfaction of credit, Chavez would be entitled to future medicals with a mutually agreed-upon provider; and (4) a provision that S.E.D./

USF & G would pay one-half of attorney's fees. Chavez rejected the offer.

{7} Upon completion of the formal hearing, the WCA awarded S.E.D./USF & G $12,214.22 in direct reimbursement, a $12,267.02 credit against Chavez' future permanent partial disability claims, a $4,366.31 credit against future medicals, and a $483.27 credit for previously overpaid permanent partial disability benefits. The WCA calculated these figures upon its conclusion that S.E.D./USF & G were entitled to a full, dollar-for-dollar reimbursement, subject only to the parties' agreement to reduce S.E.D./USF & G's "reimbursement by one-third for attorney's fees and tax and by one-half the cost of [Chavez'] action" to collect upon S.E.D. Laboratories' uninsured motorist policy.

{8} The WCA further determined that Chavez had returned to work at a wage equal to or greater than his pre-injury wage. Finally, the WCA concluded that S.E.D./USF & G's pretrial offer of judgment was more favorable to Chavez than the results at trial, requiring Chavez to pay his own attorney's fees. Chavez appeals the WCA's judgment.

## DISCUSSION

{9} Chavez makes three challenges to the WCA's rulings below: (1) is S.E.D./USF & G entitled to a *pro tanto* reimbursement for workers' compensation benefits paid and an offset against future benefits due?; (2) upon reaching maximum medical improvement, did Chavez return to work at a wage equal to or greater than his pre-injury wage?; and (3) is Chavez entitled to attorney's fees? We address each issue in turn.

1. *Is S.E.D./USF & G entitled to a pro tanto reimbursement for workers' compensation benefits paid?*

{10} On the one hand, S.E.D./USF & G contends that it is entitled to a full, dollar-for-dollar reimbursement. On the other hand, Chavez argues that such reimbursement is contrary to New Mexico law; he argues instead that S.E.D./USF & G is only entitled to be reimbursed to the extent that the uninsured motorist policy coverage it provided duplicates the workers' compensation benefits it has already paid. This issue, in the context of uninsured motorist coverage, has not previously been raised in New Mexico's appellate courts. However, we hold that our Supreme Court's recent decision in *Gutierrez v. City of Albuquerque*, 1998–NMSC–027, 125 N.M. 643, 964 P.2d 807, decided less than one month prior to the filing of Chavez' docketing statement is controlling.

{11} In *Gutierrez*, an injured worker suffered in excess of $367,000 in damages, including amounts for medical expenses, pain and suffering, and lost wages. She had received from her employer (the City) workers' compensation benefits covering her medical expenses and partially covering her lost wages. She subsequently settled a third-party tort claim, based upon the same injuries, for $140,000, or 38% of her actual damages. After paying attorney's fees, related costs, and medical expenses not covered by workers' compensation, she was left with approximately $77,000 of the settlement. *See id.* ¶ 6.

{12} Upon entry of the third-party settlement, the City sought a dollar-for-dollar reimbursement for all workers' compensation benefits it had provided, an amount, it was estimated, that would leave her with "nothing at all or a marginal sum at best." *Id.* ¶ 6 (quoting *Gutierrez v. City of Albuquerque*, 121 N.M. 172, 175, 909 P.2d 732, 735 (Ct.App. 1995), *cert. granted*, 120 N.M. 828, 907 P.2d 1009 (1995)). The WCA denied the employer's claim, concluding instead that since the worker's $140,000 settlement covered only 38% of her actual damages, the City's reimbursement award should likewise be reduced to 38% of the cash benefits it provided. In addressing the issue presented in *Gutierrez*, our Supreme Court provided an in-depth analysis of how to calculate an employer's reimbursement from a worker's fair, but partial, third-party tort recovery. Upon consideration of NMSA 1978, § 52–5–17 (1990), the Court prescribed the following method of calculation:

[T]he employer's extent of reimbursement for compensation paid is determined by identifying the nature and purpose of the

payments made by the employer, and comparing the elements of the tort recovery with those which are duplicative of the employer's compensation payments.

*Gutierrez,* 1998–NMSC–027, ¶ 8, 125 N.M. 643, 964 P.2d 807. In effect, the Court delimited, for the first time, the nature and extent of an employer's legal interest in an injured worker's third-party tort recovery:

An employer has an interest in those elements of the worker's tort recovery which are also covered by worker's compensation, but no interest in those elements of a worker's tort recovery that were calculated in good faith to remedy losses not covered.

*Id.* ¶ 14. The focus of the *Gutierrez* analysis is, therefore, upon the *elements* of the worker's recoveries. Upon reimbursement requests, workers' compensation judges are now required to conduct an element-by-element comparison of the benefits paid under workers' compensation and the damages awarded in tort. *See id.* ¶ 8. "The total of the duplicative payments is the amount which must be reimbursed." *Id.*

■ {13} S.E.D./USF & G argues that *Gutierrez* does not apply in this case. It argues that the Legislature did not intend, nor did our Supreme Court, for employer-provided uninsured motorist policy pay-outs to be treated in the same manner as third-party tort recoveries. It asserts that *Gutierrez* involved a claim against, and recovery from, a third party; it did not involve a claim against the employer's uninsured motorist policy. We do not agree with this narrow reading of *Gutierrez,* and we will address, in turn, the case authorities relied upon by S.E.D./USF & G.

{14} In *Draper v. Mountain States Mutual Casualty Co.,* 116 N.M. 775, 867 P.2d 1157 (1994), the first case upon which S.E.D./USF & G relies, our Supreme Court first construed Section 52–5–17(C), a then-recent amendment to our workers' compensation statute. Section 52–5–17(C) in part provides:

The worker or his legal representative may retain any compensation due under the uninsured motorist coverage provided in [the uninsured motorist statute] if the worker paid the premium for that coverage. If the employer paid the premium,

the worker or his legal representative may not retain any compensation due under [the uninsured motorist statute], and that amount shall be due to the employer.

The issue presented in *Draper* was narrow: should this provision be construed as foreclosing an injured worker from making a claim on an uninsured motorist policy for which his employer paid the premiums? *See Draper,* 116 N.M. at 777, 867 P.2d at 1159. A literal reading of the provision would indicate that it should. However, the Court succinctly rejected this reading, concluding instead that "[t]he legislature could not have intended that the employer receive more money than it is paying its employee in workers' compensation benefits when it is the employee who suffered the injury." *Id.* at 778, 867 P.2d at 1160; *see also Gutierrez,* 1998–NMSC–027, ¶ 23, 125 N.M. 643, 964 P.2d 807. The Court held that the worker was entitled to "receive and retain uninsured motorist benefits in excess of what he must reimburse his employer for workers' compensation." *Draper,* 116 N.M. at 778, 867 P.2d at 1160.

{15} In *Mountain States Mutual Casualty Co. v. Vigil,* 1996–NMCA–062, 121 N.M. 812, 918 P.2d 728, another case upon which S .E.D./USF & G relies, this Court faced a complementary issue: is the provider of an uninsured motorist policy entitled to an offset, or credit, prior to its provision of uninsured motorist benefits to an injured worker who has already received a settlement of his claim against a third-party tortfeasor? *See id.* ¶ 4. While recognizing an employer's right to reimbursement for workers' compensation benefits paid, *see id.* ¶ 6, we held that such right accrues to the employer, not its insurer, *see id.* ¶¶ 8, 12. Therefore, where the insurer had not provided the workers' compensation benefits upon which the offset was sought and the employer had already settled its reimbursement claim with the injured worker, we concluded that the insurer had nothing to claim. *See id.* ¶ 8 ("Insurer's obligation to pay [uninsured motorist] benefits is not affected by Section 52–5–17(C).").

■ {16} Both *Draper* and *Vigil* address well-established and long-recognized state-

ments of intent motivating Section 52–5–17; that is, that an employer has a right to be reimbursed from funds an injured worker obtains upon a third-party tort claim for any workers' compensation benefits it has paid. *Accord Montoya*, 114 N.M. at 355, 838 P.2d at 972 (recognizing Section 52–5–17 as protecting employer's right to reimbursement). However, neither case explains how this right is to be quantified in the context of uninsured motorist coverage.

{17} S.E.D./USF & G next invokes rules of statutory construction and legislative intent. Its argument is straightforward: why would the Legislature have amended Section 52–5–17 to include Subsection (C) if it intended an employer's reimbursement right to be calculated in the same manner no matter that the worker collected upon an employer-provided insurance policy and not a third-party tort action? In other words, it argues that by its plain structure, Section 52–5–17 treats, for purposes of reimbursement, recoveries upon third-party tort actions and uninsured motorist policies differently. *Compare* Sections 52–5–17(A) & (B) *with* Section 52–5–17(C). As S.E.D./USF & G emphasizes, *Gutierrez*'s language appears to reflect this distinction. *See Gutierrez*, 1998–NMSC–027, ¶ 1, 125 N.M. 643, 964 P.2d 807 (limiting discussion to partial recoveries in tort). Accordingly, it concludes, this Court would have to ignore clear legislative intent, as demonstrated by the statute's structure and language, to apply the *Gutierrez* method of reimbursement calculation in the present case.

{18} First, we do not agree with S.E.D./ USF & G's assertion that the addition of Section 52–5–17(C) to the workers' compensation statute indicates a legislative intent to treat reimbursement from insurance proceeds differently from third-party tort recoveries. As we noted in *Vigil*, the Legislature amended the workers' compensation statute in order to preserve an employer's reimbursement right in the context of uninsured motorist policies, not to distinguish it based upon the mode of a worker's recovery. *See Vigil*, 1996–NMCA–062, ¶ 11, 121 N.M. 812, 918 P.2d 728 (discussing *Continental Ins. Co. v. Fahey*, 106 N.M. 603, 606, 747 P.2d 249, 252 (1987)); *see also Dominguez v. Dairy-*

*land Ins. Co.*, 1997–NMCA–065, ¶ 9, 123 N.M. 448, 942 P.2d 191.

{19} In addition, we adopted a plain-meaning construction of the language of Sections 52–5–17(A) & (B), similar to that advocated by S.E.D./USF & G here for Section 52–5–17(C), in *Gutierrez*, 121 N.M. at 176–78, 909 P.2d at 736–38, and our Supreme Court reversed. In *Gutierrez*, we were construing statutory language that allowed the employer an assignment "to the extent of payment." Our Supreme Court held that, notwithstanding this language, the assignment or reimbursement would not be to the actual extent of payment. Likewise, in this case, we do not believe that the similar language ("that amount shall be due to the employer") was intended to mean that the actual amount would be due to the employer. For these reasons, we reject S.E.D./USF & G's construction of the statute and the conclusions it draws as to legislative intent.

{20} Second, for purpose of calculating the amount of reimbursement due an employer, we believe that S.E.D./USF & G's attempt to distinguish recoveries based upon an employer-provided uninsured motorist policy as opposed to a third-party tort action is a distinction without a difference. In this regard, we return to and emphasize the factors that triggered our Supreme Court's analysis in *Gutierrez*: (1) a partial recovery upon (2) a third-party tort action. S.E.D./USF & G isolates the latter factor to the exclusion of the first; that is, it asserts that *Gutierrez* dealt with, and its holding should be confined to, reimbursement upon workers' recoveries in tort. It makes no substantive argument as to why this aspect of the opinion is of critical importance, and we see none to be made. *Cf. Brown v. Arapahoe Drilling Co.*, 70 N.M. 99, 104, 370 P.2d 816, 820 (1962) ("[W]hatever right the employer or its insurer has to reimbursement follows payment of compensation, but does not precede it.") (citation omitted); *Enriquez v. Cochran*, 1998–NMCA–157, ¶ 117, 126 N.M. 196, 967 P.2d 1136 (recognizing that workers' compensation statute is in part intended to facilitate full compensation of injured workers and equitably distribute loss).

{21} What was of analytical importance to the *Gutierrez* Court was not simply that the recovery upon which the insurer sought reimbursement was in tort, but that the *elements of damages* afforded in tort differ from those benefits provided under the workers' compensation statute. *See Gutierrez,* 1998–NMSC–027, ¶¶ 8, 10, 125 N.M. 643, 964 P.2d 807. We recognize that recovery under an uninsured motorist policy also differs from recovery under the workers' compensation statute. *See* NMSA 1978, § 66–5–301 (1983); *Stinbrink v. Farmers Ins. Co.,* 111 N.M. 179, 180, 803 P.2d 664, 665 (1990) (recognizing the availability of punitive damages under uninsured motorist policies); *cf. Continental Ins. Co.,* 106 N.M. at 606, 747 P.2d at 252 ("We emphasize that we have never declared a worker's compensation judgment to be the full and actual value of the worker's damages."). We thus do not read *Gutierrez* as limiting its application only to those injured workers for whom a third-party tort claim is available and viable. *Cf. id.* ¶ 11 n. 3 (recognizing potential for insurance policies to make an injured worker whole in the event of an incomplete tort recovery). It is our Supreme Court's emphasis on this lack of parity in damages versus benefits that makes clear that the crucial factor in *Gutierrez* is that the worker received only a *partial* recovery.

{22} Consistent with our reading of *Gutierrez,* we note the two discrete policies animating Section 52–5–17: "(1) prohibition against [a worker's] double recovery, and (2) protection of the employer's right to reimbursement from the proceeds of the third-party action." *Montoya,* 114 N.M. at 355, 838 P.2d at 972. S.E.D./USF & G's general reimbursement right is not at issue. However, S.E.D./USF & G argues that by disallowing a dollar-for-dollar reimbursement, this Court would allow Chavez to recover doubly, in derogation of the well-established prohibition imposed by Section 52–5–17. We do not agree. Indeed, this component of S.E.D./USF & G's argument reveals its basic flaw: upon a worker's partial recovery, how is this Court to determine whether an injured worker is impermissibly receiving a double recovery *unless* we apply the *Gutierrez* method of reimbursement? *Cf. Gutierrez,* 1998–

NMSC–027, ¶ 10, 125 N.M. 643, 964 P.2d 807 ("A windfall occurs only to the extent that the tort recovery duplicates the elements of damage covered by compensation benefits.").

{23} Accordingly, we hold that the *Gutierrez* method of calculating an employer's right to reimbursement is appropriately triggered when (1) a worker has been awarded a partial recovery, and (2) the elements of damages provided by that recovery differ from those provided by workers' compensation insurance. We emphasize that S.E.D./USF & G has expressly made no claim against Chavez' recovery from his mother's uninsured motorist policy. We express no opinion as to potential claims for reimbursement an employer may have on such policies.

{24} Upon Chavez' evidence tendered at trial, it appears that he has made only a partial financial recovery. However, damages were not fully litigated or determined. Given the questions left unanswered below, we remand this matter for hearing on the actual extent of Chavez' damages. If the WCA concludes he has been afforded only a partial recovery, then it shall apply the method of calculation announced in *Gutierrez* to determine the amount to which S.E.D./USF & G is entitled in reimbursement and, if applicable, offset credit against future workers' compensation benefits due.

2. *Did Chavez return to work at a wage equal to or greater than his pre-injury wage?*

{25} As computed per NMSA 1978, § 52–1–20(B) (1990), the WCA determined that Chavez' average weekly wage prior to his injury was $226.21. Upon the evidence presented at trial, it concluded that his wage upon returning to work was greater than or equal to his pre-injury wage. On appeal, Chavez challenges the sufficiency of the evidence supporting this determination.

{26} Chavez' challenge focuses primarily on the WCA's failure to enter specific findings of fact in support of this conclusion. This is not grounds for reversal. *See Villanueva v. Sunday School Bd. of the Southern Baptist Convention,* 121 N.M. 98, 104, 908 P.2d 791, 797 (Ct.App.1995). We will only

reverse if, upon our review of the whole record, there is not substantial evidence to support the WCA's ultimate finding. *See Mieras v. Dyncorp*, 1996–NMCA–095, ¶ 13, 122 N.M. 401, 925 P.2d 518. Moreover, we review substantial evidence claims only if the appellant apprises the Court of all evidence bearing upon the issue, both that which is favorable and that which is contrary to appellant's position. *See* Rule 12–213(A)(3) NMRA 1999; *Gallegos v. New Mexico Bd. of Educ.*, 1997–NMCA–040, ¶ 26, 123 N.M. 362, 940 P.2d 468; *see also Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 185–86, 848 P.2d 1108, 1112–13 (Ct.App.1993) (emphasizing appellant's duty to apprise appellate court of all evidence bearing on the issue). Failure to do so may result in our deeming the issue waived. *See* Rule 12–213(A)(3); *Gallegos*, 1997–NMCA–040, ¶ 26, 123 N.M. 362, 940 P.2d 468; *cf. State v. Martinez*, 1996–NMCA–109, ¶ 13, 122 N.M. 476, 927 P.2d 31 (noting noncompliance with Rule 12–213 does not require the Court to reject appellate claim).

■ {27} In the present case, Chavez has failed to comply with this rule. Indeed, he fails to mention *any* evidence accepted below that contradicts his position on appeal, instead claiming that S.E.D./USF & G's rendition of such evidence is mere "spin" or "twisting" of the evidence. As appellee, however, S.E.D./USF & G is permitted to argue its "spin" as reasonable inferences from the evidence and Chavez, as appellant, is required to acknowledge those inferences as evidence supporting the decision below. We, therefore, deem Chavez' argument on this point waived and affirm the WCA's ruling that Chavez returned to work at a wage equal to or greater than his pre-injury wage.

3. *Was Chavez entitled to an award of attorney's fees?*

{28} Finally, the WCA ruled that Chavez was not entitled to attorney's fees because he had rejected S.E.D./USF & G's pretrial offer of judgment, which it concluded was more favorable to Chavez than the results at trial. We do not reach this issue. Because we remand this case for recalculation of S.E.D./ USF & G's right to reimbursement, it is unnecessary for us to review whether the actual results at trial were less or more favorable to Chavez than was S.E.D./USF & G's pretrial offer of judgment. Instead, we remand the matter of attorney's fees to the WCA for reconsideration in light of its application of *Gutierrez* to S.E.D./USF & G's reimbursement claim.

## CONCLUSION

{29} For the foregoing reasons, we reverse the WCA's reimbursement award and its ruling relating to imposition of attorney's fees. The matter is remanded to the WCA so that it can recalculate the amount of S.E.D./USF & G's actual reimbursement right in light of *Gutierrez*, and again consider the attorney's fee issue after recalculation of those amounts. We affirm the WCA's determination that Chavez returned to work at a wage greater than or equal to his pre-injury wage.

{30} **IT IS SO ORDERED.**

LYNN PICKARD, Chief C.J., concurs.

SUTIN, Judge, concurring in part and dissenting in part.

{31} I concur in the opinion insofar as we affirm the WCA's ruling that Chavez returned to work at a wage equal to or greater than his pre-injury wage. I respectfully dissent from the majority's reversal of the WCA's reimbursement award. I would affirm the award.

{32} Section 52–5–17 was amended in 1990, effective January 1, 1991. Before that amendment, our Supreme Court held invalid an uninsured motorist (UIM) policy clause that allowed the insurer to deduct from amounts payable under that policy the amount of the benefits paid to the worker under the insurer's separate workers' compensation policy. *See Continental Ins. Co. v. Fahey*, 106 N.M. 603, 604–05, 747 P.2d 249, 250–51 (1987); *see also* § 52–5–17 History. This holding apparently raised concern because it appeared to give employees a windfall, or double recovery, when the employer's insurer issued both policies, causing the Legislature to pass the 1990 amendment to Section 52–5–17. *See Mountain States Mutual Cas. Co. v. Vigil*, 121 N.M. 812, 814–15, 918

P.2d 728, 730–31 (Ct.App.1996). *Cf. Dunn v. State ex rel. Taxation & Revenue Dep't, State of New Mexico,* 116 N.M. 1, 5–6, 859 P.2d 469, 473–74 (Ct.App.1993) ("Adoption of statutory amendments is presumptive evidence of a legislative intention to change existing law, including existing judicial interpretations of the original statute.").

{33} Under the new Section 52–5–17(A), an employee cannot "receive payment or damages for injuries or disablement occasioned to him by the negligence or wrong of any person … and also claim compensation from the employer, *except as provided in Subsection C of this section.*" (Emphasis added.) The pertinent language of Section 52–5–17(C) is:

> The worker or his legal representative may retain any compensation due under the uninsured motorist coverage provided in Section 66–5–301 NMSA 1978 if the worker paid the premium for that coverage. If the employer paid the premium, the worker or his legal representative may not retain any compensation due under Section 66–5–301 NMSA 1978, and that amount shall be due to the employer....

Section 52–5–17(C). This language seems plain.

{34} Our Supreme Court then Section 52–5–17(C) in *Draper v. Mountain States Mutual Cas. Co.,* 116 N.M. 775, 867 P.2d 1157 (1994). The Court interpreted the words "[i]f the employer paid the premium, the worker … may not retain any compensation due … and that amount shall be due to the employer," to mean that if an employee receives more from an employer's uninsured motorist policy than the employee receives from the employer's workers' compensation insurer, the employee may retain the excess. *See id.* at 777, 867 P.2d at 1159. In doing so, the Supreme Court stated that it could not "ignore the clear purposes of·Section 52–5–17: reimbursement and equitable distribution of the risk of loss." *Id.* at 778, 867 P.2d at 1160. The way of thinking about reimbursement is that "the employer's liability for workers' compensation is reduced by the net amount an employee receives in uninsured motorist benefits under coverage provided by the employer." *Id.*

{35} The Court of Appeals, then, interpreted Section 52–5–17(C) in *Vigil.* We stated that "[t]he *Draper* case makes it clear that the purpose of Section 52–5–17(C) is to ensure the employer a share of the recovery from UIM proceeds when the employer has provided the UIM coverage." *Id.* at 815, 918 P.2d at 731. In *Vigil,* the UIM insurer sought an offset against UIM benefits (to be paid to Draper) from the amount of unreimbursed workers' compensation payments left on the table after a settlement of the workers' compensation issues between the parties. *Vigil* held that the UIM insurer had no right of reimbursement or offset or liability reduction under Section 52–5–17(C). *Vigil* read the amendment to end the possibility, left by wording in *Continental,* that a worker could obtain workers' compensation benefits without any offset to the employer from proceeds of the employer's UIM policy. *See Vigil* at 816, 918 P.2d at 732.

{36} Were it not for the decision in *Gutierrez v. City of Albuquerque,* 1998–NMSC–027, 125 N.M. 643, 964 P.2d 807, the comfort of the foregoing case and legislative history and the plain wording in Section 52–5–17(C) should fairly easily lead this Court to hold that, in instances in which the employer provides both UIM coverage and workers' compensation, the employer is entitled to use the proceeds of the employer's UIM coverage to fully reduce its workers' compensation liability, that is, to reimburse what the employer has paid and is required to pay in the future.

{37} In *Gutierrez,* the employee recovered from a third-party tortfeasor, not from the employer's UIM insurer. *Gutierrez* interpreted the employer's reimbursement right under Section 52–5–17(A) from the employee's third-party tort recovery to be limited based on an apportionment that takes into consideration the employee's non-workers' compensation type damages and that correspondingly reduces the employer's reimbursement. *See id.* The majority in the present case feels compelled to apply *Gutierrez* to circumstances in which proceeds from the employer's UIM coverage, rather than proceeds from a third-party tort recovery, are payable to the employee. *Gutierrez* was decided in August 1998. No legislative ac-

tion has yet occurred in response to that decision.

{38} Our Supreme Court's decisions and legislative acquiescence or agreement to this point in time have resulted in the following current state of the law: An injured employee is entitled under Section 52–5–17(A) to reduce his or her workers' compensation reimbursement obligation according to *Gutierrez* methodology, except that, if UIM proceeds are received by the employee from an employer-purchased UIM policy, the employee may retain only that amount of the UIM proceeds which is in excess of the workers' compensation benefits received and to be received from the employer. The majority now expands this current state of the law to allow further reduction of the employer's reimbursement by holding that the *Gutierrez* methodology is to be applied when the employee receives UIM proceeds from the employer's UIM policy.

{39} *Gutierrez* did not involve or implicate either UIM coverage or Section 52–5–17(C) in any way; however, *Gutierrez* is an invitation to determine, as does the majority, that no reasonable distinction should exist between' tort recovery and UIM recovery and to accordingly apply the *Gutierrez* methodology. Indeed, it is also enticing to select the broad language of *Montoya v. AKAL Security, Inc.,* 114 N.M. 354, 357, 838 P.2d 971, 974 (1992) regarding the "broader objective ... to achieve an equitable distribution of the risk of loss," as have *Draper* and *Gutierrez,* and as the majority does in the present case, to support a reading of the statute that is not found in its plain language. One cannot disagree with the general philosophy and goal of providing avenues for an injured worker to approach full recovery for his or her injuries. However, the Legislature did purposely amend Section 52–5–17, did enact Section 52–5–17(C), did single out UIM as an exception, and did, plainly, say that: "If the employer paid the premium, the worker ... *may not* retain *any* compensation due ... and *that amount shall be due to the employer.*" (Emphasis added.) And even though *Draper* nevertheless read this language to mean that the employee is entitled to the excess of the UIM benefit over the workers' compensation

to be reimbursed, I think it more appropriate to leave to our Supreme Court the policy decision to interpret this plain language, contained in a statutory exception that purposely singles out UIM insurance, to say that the employer's liability will be increased based on the *Gutierrez* methodology. While I understand the Supreme Court's goal in *Gutierrez,* I do not see that decision or its rationale as a mandate that we interpret Section 52–5–17(C) to require that recovery under a UIM policy be analyzed the same as recovery against a third-party tortfeasor. I think that we should leave that up to our Supreme Court to reckon with.

{40} If the employer receives full workers' compensation reimbursement from UIM proceeds, and the employee receives the remainder, it appears to me that we follow what Subsection (C) says and what *Draper* holds, and we remain within the "two discrete policies animating Section 52–5–17" noted by the majority: one, prohibition against the employee's double recovery from the employer and, two, protection of the employer's right to reimbursement. The result is that the employee does not retain any compensation under the UIM coverage except that which *Draper* permits. By this result, the *Montoya* policies recognized by the majority are met. *See Montoya,* 114 N.M. at 355, 838 P.2d at 972.

{41} The policy behind uninsured motorist coverage is to compensate those persons who have the foresight to protect themselves against a financially irresponsible motorist. *See Farmers Alliance Mutual Ins. Co. v. Bakke,* 619 F.2d 885, 891 (10th Cir.1980) (quoting *Palisbo v. Hawaiian Ins. and Guaranty Co.,* 57 Haw. 10, 547 P.2d 1350, 1354 (1976)). An employer can reject UIM coverage in liability policies that the employer purchases. *See Vigil v. Rio Grande Ins. of Santa Fe,* 1997–NMCA–124, ¶ 7, 124 N.M. 324, 950 P.2d 297 (holding that husband who was named insured was bound by wife's rejection of UIM coverage). *Cf. Archunde v. Int'l Surplus Lines Ins. Co.,* 120 N.M. 724, 727, 905 P.2d 1128, 1131 (Ct.App.1995) (an employee has no claim for UIM coverage against his or her employer's insurer where the employer does not obtain liability insur-

ance covering the vehicle that the employee is driving and the employee is not otherwise an insured under the employer's liability policy). If an employee wants to be protected beyond the amount of UIM coverage purchased by his or her employer, the employee should purchase a greater amount. *Cf. Mountain States Mutual Cas. Co. v. Martinez,* 115 N.M. 141, 143–44, 848 P.2d 527, 529–30 (1993) ("[If] a passenger wishes to be protected beyond the legal liability limit minimum, he or she should purchase a greater amount. . . .").

{42} In *Gutierrez,* the Court was concerned that the employer's construction of the statute "frustrates the legislature's intent to encourage tort suits where third-party wrongdoers are held responsible." *Id.* ¶ 23. Under Section 52–5–17(C), that concern does not exist; in fact, to allow the employer more complete reimbursement from UIM proceeds under a policy the employer purchases can have the effect of encouraging the employer to purchase such coverage.

{43} We cannot assume that an employer's decision to provide UIM coverage for employees is to make the employee whole. Nor can we divine that the Legislature intended for an employer's reimbursement to be reduced (i.e., the employer's workers' liability obligation to be increased because its reimbursement right is diminished) when the employer chooses not to reject UIM coverage. Rather, it is more reasonable to conclude that one purpose of Subsection (C) is to encourage employers to keep UIM coverage, and perhaps even to obtain coverage above the minimum level, in order (1) to obtain full workers' compensation reimbursement, and (2) have an excess available for the employee in order to assist the employee's medical recovery and to get the employee back to work as a productive employee as soon as possible—all in the best interests of the employer.

{44} That Subsection (C) makes a very clear distinction between UIM coverage that the employee pays for and UIM coverage that the employer pays for simply highlights the fact that a reasonable distinction can and should be made between the intended apportionment of proceeds from UIM coverage purchased by the employer, and the intended apportionment of proceeds that the employee recovers from his or her own UIM policy or from a third-party tortfeasor. Thus, employee and employer may well have different incentives in regard to the purchase of UIM coverage. "Public policy does not mandate that we interfere with the balance of these incentives." *Mountain States,* 115 N.M. at 144, 848 P.2d at 530.

{45} After *Draper* and the majority's decision in the present case, Subsection (C) must now be read as follows:

> If the employer paid the [UIM policy] premium, the worker or his legal representative may not only retain the excess of compensation due under Section 66–5–301 NMSA 1978 over workers' compensation benefits paid or to be paid, but also may retain, in addition, further amounts of such compensation based on the methodology set out in *Gutierrez v. City of Albuquerque,* 1998–NMSC–027, 125 N.M. 643, 964 P.2d 807.

I submit that this is a far cry from how Subsection (C), an exception to Subsection (A), still looks when one opens the statute book.

{46} I would affirm the WCA's reimbursement award. I, therefore, respectfully dissent from that part of the opinion that reverses that award.