892 P.2d 600

**Tony R. SAMORA, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellant.**

**No. 22092.**

Supreme Court of New Mexico.

March 13, 1995.

Miller, Stratvert, Torgerson & Shlenker, P.A., Nancy Augustus, Rudolph A. Lucero, Albuquerque, for appellant.

Nancy L. Garner & Associates, P.C., Nancy L. Garner, Albuquerque, for appellee.

Thomas A. Sandenaw, Jr., Las Cruces, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Lisa M. Burke, Albuquerque, for amicus New Mexico Defense Lawyers' Ass'n.

William H. Carpenter, Cynthia A. Fry, Albuquerque, for amicus New Mexico Trial Lawyers' Ass'n.

## OPINION

MINZNER, Justice.

Defendant–Appellant, State Farm Mutual Automobile Insurance Company (State Farm), appeals an order of summary judgment entered in favor of Plaintiff–Appellee, Tony R. Samora (Samora). We address the question not answered in *Mountain States Mutual Casualty Co. v. Martinez*, 115 N.M. 141, 144, 848 P.2d 527, 530 (1993) (Ransom, J., specially concurring); that is, whether an injured passenger's "Class I" coverage is reduced by a liability payment made by a "Class II" insurer when the same liability payment also reduced the "Class II" insurer's coverage for the same injured passenger. For the reasons discussed below, we reverse and remand to the trial court for entry of summary judgment in favor of State Farm.

## I. FACTS

The relevant facts are uncontested. Samora was injured when he was a passenger in a vehicle that was involved in a one car accident. The driver was insured by American States Insurance Company (American States). The American States policy provided for a $50,000 limit on liability per person per accident. The policy also contained a

provision limiting uninsured/underinsured motorist (UIM) coverage to $50,000 per person per accident. In addition, the American States policy included an offset provision that required any amount of UIM coverage to be offset by any liability amounts paid. Accordingly, Samora was paid only $50,000 under the liability provision. The parties do not dispute that the contractual offset is valid and that Samora is not entitled to UIM coverage under the American States policy.

At the time of the accident Samora was covered by a family insurance policy held by his parents and issued through State Farm. The State Farm policy provided for $25,000 in UIM coverage. When American States refused to pay Samora any additional damages under its policy because of the offset provision, Samora sought payment under the UIM clause of the State Farm policy. After State Farm refused to pay Samora any additional amounts under the policy, Samora filed a declaratory relief action requesting that the district court declare the rights and liabilities of the parties with respect to the insurance policy. The trial court entered summary judgment in favor of Samora. The trial court concluded that under the insurance contract with State Farm, Samora's "Class I" insurer, Samora had a reasonable expectation that he would be covered for damages he sustained as a result of an accident involving an underinsured/uninsured driver. The trial court determined that a policy exclusion such as the one contained in the American States policy was not contemplated by Samora.

State Farm's argument on appeal is twofold. First, State Farm claims that it is entitled to the statutory offset contained in NMSA 1978, Section 66-5-301(B) (Repl. Pamp.1994), because it is a "Class I" insurer, even though the American States policy also contained an offset provision. Second, State Farm contends that Samora could not have reasonably expected UIM benefits under the State Farm policy.

## II. DISCUSSION

■ Our inquiry begins with the definitions of "Class I" and "Class II" insureds. While Class I insureds include "the named insured, the spouse, and those relatives that reside in the household[,] ... Class II insureds are insured by virtue of their passenger status in an insured vehicle." *Tarango v. Farmers Ins. Co. of Arizona*, 115 N.M. 225, 226, 849 P.2d 368, 369 (1993). Samora was directly insured by State Farm through his parents' policy with State Farm; therefore, Samora is a Class I insured of State Farm. Similarly, Samora is a Class II insured of American States because his coverage under the American States policy arises from his status as a passenger in an insured vehicle.

### A. Contractual Offset

■ Our determination whether both a statutory offset and a contractual offset may be applied against the liability payment made to an injured party by a Class II insurer necessarily requires us to determine what UIM benefits were available to Samora in this case. Samora contends that the State Farm UIM coverage of $25,000 and the American States UIM coverage of $50,000 should be stacked for a total of $75,000 available coverage. Samora reasons that the American States contractual offset of $50,000 should be applied against the $50,000 liability payment, relieving American States of any further obligation and leaving $25,000 in UIM benefits to be paid by State Farm.

In contrast, State Farm argues that $75,-000 is not the total available UIM coverage. State Farm reasons that the offset clause contained in the American States policy reduced the UIM coverage to zero under that policy because Samora was paid the liability limit of $50,000. Thus, there is no coverage to "stack" with the coverage provided under the State Farm policy. State Farm further reasons that since there is no UIM coverage under the American States policy, there is nothing against which the mandatory statutory offset may be applied. As a result, State Farm argues that it is entitled to the offset, meaning that it is not required to pay any additional amount to Samora.

We have stated in earlier decisions that public policy favors the stacking of coverage in underinsured/uninsured motorist cases, *see, e.g., Jimenez v. Foundation Reserve Ins. Co.*, 107 N.M. 322, 325, 757 P.2d 792, 795

(1988); therefore, we understand how Samora arrived at the figure of $75,000 as the amount of UIM coverage available. However, we believe State Farm's calculation of available UIM coverage more accurately reflects our reasoning in *Mountain States Mutual Casualty Co. v. Martinez*. In that case we upheld a contractual exclusion contained in an insurance policy under which UIM coverage was offset by the amount paid under the liability portion of the policy. We determined that the exclusion did not violate public policy because it affected a Class II insured rather than a Class I insured. 115 N.M. at 142, 848 P.2d at 528.

In this case, since Samora is a Class II insured under the policy issued by American States and held by the negligent driver, the contractual offset provision contained in the American States policy is valid and enforceable and is not in violation of public policy. Because of the American States policy exclusion, no UIM benefits were available to Samora under the policy because he was paid the liability limit of $50,000.

### B. Statutory Offset

Section 66–5–301(B) defines an "underinsured motorist" as "an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage." In *Schmick v. State Farm Mutual Automobile Insurance Co.*, 103 N.M. 216, 223, 704 P.2d 1092, 1099 (1985), we interpreted the statutory definition of "underinsured" as inherently including an offset equal to the tortfeasor's liability coverage. Specifically, we noted that because Section 66–5–301(B) limits the insured's [1] recovery to the amount of uninsured motorist coverage purchased for his or her benefit, *see id.*,—assuming the insured's damages exceed the amount of that coverage—a person will be underinsured only "when the aggregate of the insured's uninsured motorist coverage reduced by the

tortfeasor's liability coverage is greater than zero." Thus offset is required to ensure that the insured does not receive payment from his or her insurer greater than the coverage purchased.

State Farm contends that the offset mandated by Section 66–5–301(B) entitles it to offset the $50,000 liability-insurance payment made to Samora by American States against the $25,000 UIM coverage provided under its own insurance policy. Thus, State Farm reasons, Samora is not entitled to any additional payment because he received twice the amount of the $25,000 limit contained in the State Farm policy. State Farm contends that as a Class I insurer, it is entitled to the statutory offset.

We agree with State Farm that it is entitled to the statutory offset. Our determination is consistent with the second part of Section 66–5–301(B), which refers to the "insured's" UIM coverage, and, therefore, necessarily refers to the injured party's insurance company, the Class I insurer. Applying the statutory offset to this case, the $25,000 in UIM coverage provided by Samora's State Farm policy is completely offset by the $50,000 paid to him by American States. According to the definition of Section 66–5–301(B), the negligent driver was not underinsured because the negligent driver's liability coverage of $50,000 exceeded Samora's UIM coverage of $25,000. *See Schmick*, 103 N.M. at 223, 704 P.2d at 1098. Therefore, Samora was not entitled to any additional payment from State Farm.

### C. Insured's Contractual Expectations

Relying on our decision in *Padilla v. Dairyland Insurance Co.*, 109 N.M. 555, 787 P.2d 835 (1990), the trial court concluded that Samora could reasonably expect UIM coverage by virtue of his contractual relationship with State Farm, the Class I insurer, and that an offset under the present circumstances was not contemplated by the parties. While the trial court is correct that *Padilla* stands for the proposition that an insured has reasonable expectations in a contractual

---

1. We construe the term "insured" as used in Section 66–5–301(B) to mean the party injured in the accident. This definition is consistent with our interpretation of Section 66–5–301(B) in *Schmick v. State Farm Mutual Automobile Insurance Co.*

relationship with an insurance company, we do not believe those expectations extend to the facts of the instant case. Specifically, an insured cannot reasonably expect to recover more than the UIM coverage for which he or she paid. Here, Samora paid for $25,000 of UIM coverage and received $50,000 in benefits from the driver's insurance company. Samora therefore could not expect to recover payment from State Farm.

We are cognizant of Samora's argument that permitting both a statutory and a contractual offset results in a "double" offset on behalf of the insurers. Contrary to Samora's assertion, we believe the two types of offset are distinct. In this case the contractual offset contained in the American States policy affects Samora's status as a Class II insured. In contrast, the mandatory statutory offset contained in Section 66–5–301(B) applies to the Class I insurer, State Farm. We are unpersuaded that any double offset occurred, especially given the fact that Samora did not recover an amount less than his UIM coverage under the State Farm policy, and in fact recovered in excess of that amount.

## III. CONCLUSION

State Farm was entitled to offset the $50,000 paid to Samora by American States against the $25,000 of UIM coverage provided by its policy. Therefore, State Farm owed no additional payment to Samora.

The judgment entered in favor of Samora is vacated. We reverse and remand to the trial court for entry of judgment in favor of State Farm. No costs are awarded.

IT IS SO ORDERED.

RANSOM and FROST, JJ., concur.