2006-NMCA-060

135 P.3d 1277

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Mary Beth JONES, Defendant–Appellant.**

**No. 25,507.**

Court of Appeals of New Mexico.

March 8, 2006.

Certiorari Denied, No. 29,779 and No. 29,781, May 25, 2006.

Miller Stratvert, P.A., Rudolph A. Lucero, Todd A. Schwarz, Albuquerque, NM, for Appellee.

Salazar & Sullivan, Patrick W. Sullivan, Albuquerque, NM, William H. Lazar, Tesuque, NM, for Appellant.

## OPINION

BUSTAMANTE, Chief Judge.

{1} This case presents an opportunity to clarify how an insurer may claim an offset against its underinsured motorist coverage when a third party pays a portion of a victim's damages. We conclude that in such a case, any statutory offset will be determined by the insurer's status as either the primary or a secondary insurer. We also conclude that any contractual offset in the circumstances presented here would violate public policy.

## BACKGROUND

{2} Mary Beth Jones was injured when the car in which she was a passenger, driven by Kathy Williams, was struck by a car driven by Ethel Dorand. The accident was entirely the fault of Dorand, who had automobile liability insurance with limits of $100,000. Williams carried $100,000 of uninsured motorist (UM) coverage with State Farm Mutual Automobile Insurance Company. Jones carried UM insurance with Twin City Fire Insurance Company, with policy limits of $500,000. Jones settled her liability claim with Dorand's insurance company for the policy limits of $100,000, and then made claims against State Farm and Twin City for the payment of the policy limits of underinsured (UIM) motorist benefits. The parties do not dispute that Jones's damages are at least equal to the aggregate of all underin-

sured motorist coverage, or $600,000. Twin City is not a party to this dispute.

{3} State Farm filed an action for a declaratory judgment denying any liability to Jones under its UIM policy covering Williams's car. In its complaint and motion for summary judgment, State Farm asked the district court to determine as a matter of law that Dorand's vehicle did not meet State Farm policy's definition of an underinsured vehicle or, alternatively, that State Farm was entitled to a contractual offset of its Class II UIM coverage by the payment of the tortfeasor's $100,000 policy limits, effectively reducing its liability to zero. The district court held that although the State Farm policy did cover Jones (as Williams's passenger), State Farm ultimately had no liability since its $100,000 coverage could be offset by the $100,000 paid by the tortfeasor. Thus, the district court granted summary judgment in favor of State Farm, and Jones appeals. As we discuss below, we agree that Jones was covered by the State Farm policy. We more fully address the contractual language of that policy and its nature in connection with our discussion of the issues.

## DISCUSSION

{4} We address the following issue: Where an injured passenger stacks Class II primary coverage and Class I secondary UIM coverage, and the amount of damages exceed the available aggregate coverage, how is the statutory offset for liability payments received from a third-party tortfeasor applied? In deciding who gets the statutory offset, we must necessarily address State Farm's contention that it is entitled to a contractual offset for the liability payments. We hold that State Farm is not entitled to a contractual offset, and that the statutory offset for liability payments applies to the primary insurer, which in this case is State Farm. We therefore affirm.

{5} To effectively understand the parties' arguments about contractual and statutory offsets, we must first lay out the basic rules of UM/UIM coverage. These rules allow us to evaluate the extent to which Jones is entitled to UIM coverage. We then discuss the rules governing offsets and analyze whether in these circumstances an insurer

may benefit from either a statutory or contractual offset.

## STANDARD OF REVIEW

{6} "Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Martinez v. Allstate Ins. Co.*, 1997–NMCA–100, ¶ 5, 124 N.M. 36, 946 P.2d 240 (internal quotation marks and citation omitted). This is an appeal from an order granting a motion for summary judgment based only on issues of law without any issues of fact. When the parties agree that the material facts are not disputed, this Court reviews the question of law presented de novo. *State Farm Fire & Cas. Co. v. Farmers Alliance Mut. Ins. Co.*, 2004–NMCA–101, ¶ 5, 136 N.M. 259, 96 P.3d 1179.

## ANALYSIS

{7} As a starting point, we note that our courts have not yet had an occasion to directly address the issue presented in this case. Therefore, as context for our discussion, we begin with a brief overview of the UIM statute and case law interpreting the statute. In light of these rules, we describe the situation facing Jones in this case. We then address the application of the statutory liability offset, and State Farm's contention that it is entitled to a contractual liability offset.

### 1. Underinsured Motorist Coverage

{8} An UIM is defined by the New Mexico Uninsured Motorist statute, NMSA 1978, § 66–5–301(B) (1983) as follows:

[An] "underinsured motorist" means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.

(Internal quotation marks omitted). The underlying policy of the UM/UIM statute is "to compensate persons injured through no fault of their own," by uninsured or inadequately insured motorists. *Konnick v. Farmers Ins. Co.*, 103 N.M. 112, 114, 703 P.2d 889, 891 (1985). "[T]he intent of the Legislature was to put an injured insured in the same posi-

tion he would have been in had the tortfeasor had liability coverage in an amount equal to the uninusured/underinsured motorist protection purchased for the insured's benefit." *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985). New Mexico cases interpreting the statute are guided by the intent of the Legislature and the strong public policy of protecting injured insureds.

## 2. Class I and Class II Insureds and Stacking

{9} In order to effectuate the intent of the Legislature, our Supreme Court has created different categories of insureds and insurers: Class I and Class II insureds, and primary and secondary insurers. "New Mexico recognizes two classes of insureds, each with attendant rights for purposes of stacking [ (combining) ] uninsured motorist coverage benefits." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000–NMSC–033, ¶ 22, 129 N.M. 698, 12 P.3d 960. A Class I insured is "the named insured ... [on] the policy, the spouse, and [those] relatives" that reside in the household. *Konnick*, 103 N.M. at 115, 703 P.2d at 892. A Class II insured is insured by virtue of his or her presence in "an insured ... vehicle." *Id.*

> Class I insureds may stack all uninsured motorist policies purchased by the named insured because those policies were purchased to benefit the named insured and his or her family, but Class II insureds may only recover under the policy on the car in which they rode because the purchaser only intended occupants to benefit from that particular policy.

*Ponder*, 2000–NMSC–033, ¶ 22, 129 N.M. 698, 12 P.3d 960 (citations omitted). The law in New Mexico is clear that "when an injured insured is the beneficiary of a policy and either the insured or another has paid premiums for the benefit of the injured insured, then all policy coverages under which [the injured insured] is a beneficiary may be stacked." *Jimenez v. Found. Reserve Ins. Co.*, 107 N.M. 322, 325, 757 P.2d 792, 795 (1988) (citation omitted). The term "coverage" in the UIM statute is liberally construed to include coverage from one or more policies purchased for the injured insured's

benefit, including Class I policies, and the Class II policy on the car in which the insured was a passenger. *Schmick*, 103 N.M. at 219–20, 704 P.2d at 1095–96. The "only limitations to be placed on uninsured/underinsured motorist coverage are that the insured legally be entitled to recover damages and that the negligent driver be either uninsured or underinsured." *Morro v. Farmers Ins. Group*, 106 N.M. 669, 671, 748 P.2d 512, 514 (1988) (internal quotation marks and citation omitted).

{10} Thus, the amount of coverage available to an injured insured is determined by the aggregate of their Class II and Class I coverage. *See Jimenez*, 107 N.M. at 325, 757 P.2d at 795 (stating that the law in New Mexico is clear that when an injured insured is the beneficiary of a policy, and either the insured or another has paid premiums for the benefit of the injured insured, then all policy coverage under which the injured insured is a beneficiary may be stacked); *Morro*, 106 N.M. at 671–72, 748 P.2d at 514–15 (holding that an injured insured may stack Class I and Class II coverage to determine a tortfeasor's underinsured status).

{11} Therefore, in this case, Jones is a Class II insured under the State Farm policy, with a limit of $100,000 in UIM coverage. Jones is a Class I insured under the Twin City policy, with a limit of $500,000 in available UIM coverage. Stacking the Class II and the Class I coverages, Jones has a total of $600,000 aggregate UIM coverage. We next turn to the distinction between primary and secondary insurers.

## 3. Primary Versus Secondary Liability for UIM Payments

{12} In addition to Class I and Class II insured status, New Mexico cases also distinguish between a primary and secondary UM/UIM insurer. A primary insurer is the insurer of the vehicle involved in the accident, and owes primary coverage to the limits of its policy if less than the loss suffered. *Branchal v. Safeco Ins. Co.*, 106 N.M. 70, 71, 738 P.2d 1315, 1316 (1987). Any other available insurance becomes secondary to the extent of the injured insured's injuries and the

limits of the secondary insurer's UIM coverage. *Id.* In making the distinction between primary and secondary insurers, our Supreme Court in *Branchal* reasoned that the automobile policy "closest to the risk" ranks ahead of other policies insofar as priority for payment is concerned, and thus is the primary insurer. *Id.* (internal quotation marks omitted).

{13} In this case State Farm, as the insurer of the vehicle involved in the accident, is the primary insurer. Twin City is the secondary insurer. Thus, to summarize the classifications, Jones has Class II, primary UIM coverage through State Farm in the amount of $100,000, and Class I, secondary UIM coverage through Twin City in the amount of $500,000. Applying the foregoing rules, we conclude that aggregate UIM coverage available to Jones is $600,000. As we describe below, the primary/secondary classification is central to the statutory offset while the Class I/Class II distinction is relevant to the contractual offset.

### 4. Statutory Offset for Liability Payments

{14} The UIM statute contemplates that any applicable UIM coverage will be offset by the amount of liability coverage recovered by the insured. *Schmick*, 103 N.M. at 220, 704 P.2d at 1096. The Court in *Schmick* stated that "[w]hile our statute does not specifically provide that the insured's underinsured motorist liability insurance is to be offset by the tortfeasor's liability coverage, ... such an offset is inherent in our statutory definition of underinsured motorist." *Id.* at 223, 704 P.2d at 1099. The Court reasoned that it is apparent from the language of the statute that the amount of the insured's recovery is limited to the amount of uninsured motorist coverage purchased for the insured's benefit and "that amount will be paid in part by the tortfeasor's liability carrier and the remainder by the insured's uninsured motorist insurance carrier." *Id.* Thus, an offset in the amount of the tortfeasor's liability is required. *Id.* The issue of which insurer gets the benefit of the statutory liability offset has not been directly decided in New Mexico, though two cases with

similar facts to the present case have indirectly addressed the issue.

{15} In *Morro*, the issue presented to our Supreme Court was whether an injured passenger could stack Class I and Class II coverage. 106 N.M. at 672–73, 748 P.2d at 515–16. The plaintiff was injured when she was struck by a third-party tortfeasor while loading groceries into the trunk of her daughter's car. *Id.* at 669–70, 748 P.2d at 512–13. The plaintiff's damages, as in this case, exceeded the total amount of available coverage. *Id.* at 672, 748 P.2d at 515. The Court held that the plaintiff was entitled to stack all UIM policies under which she was a beneficiary to determine the tortfeasor's status as an UIM. *Id.* The Court then applied the liability offset on a pro rata basis, dividing the offset by the number of policies provided by each insurer; a one-third offset for each of three policies issued by two insurers. *Id.* at 672–73, 748 P.2d at 515–16. The Court noted that "there was anything unfair in such an allocation of credit toward the liability of both insurers to plaintiff under all three underinsurance policies." *Id.* at 673, 748 P.2d at 516. This observation does not solve our problem because in *Morro*, unlike the present case, neither party raised the issue of primary versus secondary insurer, and the Class I carrier apparently did not object to a pro rata credit. Approval of the pro rata credit was not an essential holding of the case and does not stand as authority resolving the issue argued by the parties here.

{16} Another variation of the issue arose in *Tarango v. Farmers Ins. Co.*, 115 N.M. 225, 849 P.2d 368 (1993). The plaintiff in *Tarango* sustained damages of $40,000 when she was hit by a third party while standing near the trunk of a car in which she was a passenger. The plaintiff received a $25,000 liability payment from the third-party tortfeasor. The issue presented was whether the Class II insurer was responsible for paying the entire $15,000 of UIM benefits due to the plaintiff, or whether the Class II and Class I insurers' must each pay on a pro rated basis. Our Supreme Court adopted the following reasoning from *Branchal*:

[I]t is the better and more reasonable rule to require the insurer of the vehicle in

which the injured party was riding as a passenger, rather than as an owner or driver, to first pay uninsured motorist benefits before the injured party's insurer may be required to pay under its uninsured motorist coverage.

106 N.M. at 70, 738 P.2d at 1315. The Court reasoned that the Class II insurer was the primary insurer; its policy was written to cover passengers in its insured's vehicle, and premiums were paid specifically for that coverage. *Tarango*, 115 N.M. at 227, 849 P.2d at 370. The Court held that the amount of damages not covered by the liability payment must be paid by the primary, Class II insurer. However, unlike the present case, it was not necessary in *Tarango* to stack coverage with the secondary, Class I insurers' because the amount of UIM benefits required was less than the limit of the Class II insurers UIM coverage benefit.

{17} Although the facts in *Tarango* are distinguishable, we find the reasoning persuasive. Specifically, we agree that the insurer closest to the risk, that is the one insuring the vehicle involved in the accident, is primary. The primary insurer should first provide UIM coverage up to the limits of coverage as stated in the policy. After the primary coverage is exhausted, the secondary coverage kicks in to pay the remaining UIM benefit. In the present case, unlike in *Tarango*, the damages exceed the amount of available UIM coverage, and therefore the primary Class II and secondary Class I coverage may be stacked.

{18} Consistent with the rule that the primary insurer is the first responsible to pay UIM benefits, we believe that the primary insurer should be the first to receive the benefit of the statutory offset. We agree with the district court's reasoning that since the primary insurer bears the greatest risk, it is also entitled to offset the full amount of liability proceeds recovered before any remaining liability is assessed. We conclude that this rule is clear and easy to apply, consistent with existing case law, and consistent with the intent of the Legislature. *See Schmick*, 103 N.M. at 219, 704 P.2d at 1095 ("[T]he intent of the Legislature was to put an injured insured in the same position he

would have been in had the tortfeasor had liability coverage in an amount equal to the uninsured/underinsured motorist protection purchased for the insured's benefit."). Coverage under the primary insurer must be exhausted before any excess coverage from the secondary insurer applies; however, the primary insurer is entitled to the full benefit of the statutory offset for any liability payments received.

{19} Jones purchased $500,000 of UIM coverage for herself through Twin City. Williams purchased $100,000 of UIM coverage from State Farm for passengers in her vehicle, such as Jones. Therefore, the total UIM protection purchased for the benefit of Jones is $600,000. The total UIM benefit Jones can expect to receive, assuming damages exceed the amount of available coverage, is $600,000. Jones settled her liability claim with the tortfeasor for $100,000. State Farm, as the primary insurer, is entitled to offset the entire $100,000 in liability proceeds, thereby reducing State Farm's liability to zero. However, Twin City's UIM coverage applies as the excess, secondary insurer, in the amount of $500,000. Applying this method of stacking and the statutory offset, Jones receives her entire expected UIM coverage benefit of $600,000; $100,000 from the tortfeasor's liability payment, and $500,000 from Twin City.

{20} We emphasize that the holding in this case is specific to the facts presented. Where a passenger is injured by a third-party tortfeasor who is entirely at fault and the damages exceed the amount of available UIM coverage from both the primary Class II insurer and the secondary Class I insurer, the primary insurer, who is required to pay first, is entitled to the statutory liability offset. Under a different set of facts, a different result may be warranted. We do not decide how the offset would be applied, for example, if both the driver of the vehicle in which the insured is a passenger and a third-party tortfeasor have a degree of fault in causing the accident or where, as in *Valencia*, there are multiple claimants. *See State Farm Mut. Auto. Ins. Co. v. Valencia*, 120 N.M. 662, 665, 905 P.2d 202, 205 (Ct.App. 1995) (holding that in the case of multiple

claimants, the statutory offset is the amount of the tortfeasor's liability coverage paid to the injured insured, which is not necessarily equal to the amount of liability coverage available). Additionally, we are not deciding a case like *Samora v. State Farm Mutual Automobile Insurance Co.*, 119 N.M. 467, 892 P.2d 600 (1995), or *Mountain States Mutual Casualty Co. v. Martinez*, 115 N.M. 141, 848 P.2d 527 (1993) (hereinafter *Martinez*), where there is no third-party tortfeasor, and the driver is solely at fault.

{21} We now turn to *Samora* and *Martinez*, and State Farm's argument that it is entitled to a contractual liability offset based on the language of the State Farm policy.

### 5. Contractual Offset

■ {22} State Farm argues that the district court reached the correct decision, but misapprehended the law. State Farm contends that its policy clearly and unambiguously provides for an offset of UIM coverage equal to the insured's liability recovery. Therefore, State Farm argues that it is entitled to a contractual offset of $100,000, and Twin City is entitled to a statutory offset of $100,000. We have already determined that State Farm, not Twin City, is the party entitled to the statutory offset. We now turn to the language of the policy. The State Farm policy contains the following contractual offset provision:

3. a. the most we will pay any one *insured* is the least of:

(1) the amount by which the *insured's* damages for *bodily injury* exceed the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*; or

(2) the amount by which the *insured's* damages for *bodily injury* exceed the sum of the "each person" limits of liability of all bodily injury liability insurance coverages that apply to the accident; or

(3) the amount by which the "each person" limit of this coverage exceeds the sum of the "each person" limits of liability of all bodily injury liability insurance coverages that apply to the accident. (Emphasis in original).

State Farm contends that since the "each person" limits of the liability insurance recovered by Jones and State Farm's UM coverage are both $100,000, there is a total offset of coverage. The amount of liability coverage received by Jones, the insured, is $100,000. The "each person" limit of UM/UIM coverage under the State Farm policy is $100,000. Therefore, according to State Farm, since the "each person" limit of $100,000 does not exceed the amount of liability insurance coverage that applies to the accident, which is $100,000, State Farm's net liability is zero. State Farm relies on *Samora* and *Martinez* to support its position that Class II coverage is governed by the terms of the insurance contract, thus the offset provision in the policy must be upheld. We disagree.

{23} The district court found, and we agree, that this policy language "simply follows the statutory language and confirms that as a primary insurer, [State Farm] is entitled to offset its coverage with any recoverable liability proceeds." The district court further found that *Martinez* and *Samora* are unpersuasive as applied to the facts of this case, and distinguishable from the present case. The district court held that State Farm was not entitled to a contractual offset. We agree that *Martinez* and *Samora* are distinguishable.

{24} The issue presented in *Martinez* was "whether a guest passenger should be allowed to recover ... under both the liability and [UIM] provisions of a negligent host driver's insurance policy, even though a provision in the policy would prevent [such a] double recovery." *Martinez*, 115 N.M. at 141, 848 P.2d at 527. Rejecting a public policy argument to the contrary, our Supreme Court allowed the contractual limitation in the policy to stand, thus preventing *Martinez* from recovering under both the liability and UIM provisions of the host driver's policy. *Id.* at 143, 848 P.2d at 529. In upholding the contractual offset, the Court reasoned that Class II insured passengers are insured by virtue of their host driver's UIM provision, not by mandate of the stat-

ute, thus a Class II insured's coverage may be limited by the terms of an insurance contract without thwarting public policy. *Id.* at 142, 848 P.2d at 528. Martinez, as a Class II insured, did not pay a premium to the insurer of the vehicle in which she was a passenger, and thus she had no personal expectation of UIM coverage on that policy. *Id.* at 143, 848 P.2d at 529. The Court in *Martinez* found persuasive that to disallow a limitation on coverage that prevents a Class II injured passenger from collecting both liability and UIM coverage under the same policy would transform UIM insurance into liability insurance and thus create a duplication of liability benefits. *Id.*

{25} This distinction is important to our decision in the present case. In this case, unlike *Martinez*, the injured insured collected liability payments from a third-party tortfeasor, not the driver's Class II coverage. Jones is not attempting to collect both liability and UIM coverage from a Class II insurer, as was the case in *Martinez*. Thus, by declining to allow the contractual offset, there is no danger of turning UIM coverage into a secondary type of liability coverage, as the Court feared in *Martinez*. The policy reasons relied on by the Court in allowing the contractual offset in *Martinez* are simply not present in this case.

{26} *Samora* presented the issue of "whether an injured passenger's Class I coverage is reduced by a liability payment made by a Class II insurer when the same liability payment also reduced the Class II insurer's [UIM] coverage for the same injured passenger." *Samora,* 119 N.M. at 468, 892 P.2d at 601 (internal quotation marks and citation omitted). The parties in *Samora* did not dispute that based on the language of the Class II policy, the amount of liability coverage provided offset the entire amount of UIM coverage. *Id.* at 469, 892 P.2d at 602. Our Supreme Court in *Samora* determined that since the contractual offset in the Class II policy reduced the UIM coverage to zero, there was no Class II coverage to "stack" with Class I coverage. *Id.* at 469–70, 892 P.2d at 602–03. *Samora,* like *Martinez,* involved a situation where the driver of the vehicle was at fault for the accident, and the

driver's insurer provided Class II liability coverage for the passenger. The Court allowed the Class II insurer to take a contractual offset based on the policy language, and then allowed the Class I insurer to take the statutory offset for liability payments. *Samora,* 119 N.M. at 470, 892 P.2d at 603. The Court reasoned that the second part of Section 66–5–301(B), which refers to the "insureds" UIM coverage, necessarily refers to the injured party's insurance company, the Class I insurer. Furthermore, the Court reasoned that allowing the contractual offset to the Class II insurer and the statutory offset to the Class I insurer does not result in a "double" offset because the two types of offsets are distinct; the contractual offset affects the recovery of a Class II insured, whereas the mandatory statutory offset applies to the Class I insurer. *Samora,* 119 N.M. at 471, 892 P.2d at 604. The Court noted that no double offset occurred because the insured did not recover an amount less than his UIM coverage under his own Class I policy, and in fact ended up recovering liability coverage in an amount in excess of his UIM coverage. *Id.*

{27} It is with some difficulty that we reconcile the holdings in *Martinez* and *Samora* with the holdings of the earlier cases such as *Morro, Tarango, Schmick, Jimenez,* and *Branchal.* We therefore address the distinguishing factors in these cases in detail. First, *Martinez* and *Samora,* two cases that allow a contractual offset on a Class II policy, do not involve liability payments from third-party tortfeasors. Since *Morro* and *Tarango* involve liability payments from a third-party tortfeasor, as in the present case, there is no danger of UIM coverage by the Class II insurer becoming another type of liability coverage. We believe this is a significant distinguishing feature because the policy reasons for supporting the contractual offset in *Martinez* and *Samora* are not present in *Morro* or *Tarango.* *Jimenez, Schmick,* and *Morro* all express a public policy to liberally construe the UIM statute to include coverage from one or more policies, specifically stating that coverage, should include all policies purchased by the insured, or by another for the insured's benefit. These cases are consistent with the general policy of UM/UIM coverage,

which is to protect persons injured through no fault of their own. *Martinez* and *Samora* however rely on the different status of Class II insureds to determine that a Class II insured is subject to the terms of the insurance contract, even if that means UIM coverage is entirely offset by policy language. The Court reasons that this does not violate public policy because Class II insured's have no contractual expectation of UIM coverage. *Samora*, 119 N.M. at 470, 892 P.2d at 603; *Martinez*, 115 N.M. at 143, 848 P.2d at 529. This rationale on its face seems contrary to earlier cases holding that coverage should include *all* policies purchased by the insured *or by another for the insured's benefit. See, e.g., Jimenez*, 107 N.M. at 325, 757 P.2d at 795; *Morro*, 106 N.M. at 671, 748 P.2d at 514; *Schmick*, 103 N.M. at 219–20, 704 P.2d at 1095–96. Furthermore, *Martinez* and *Samora* are silent on the effect of primary versus secondary insurer status, which the Supreme Court relied on in the cases of *Branchal* and *Tarango*.

{28} Finally, there is a strong public policy in New Mexico favoring full compensation of injured insureds. *Fickbohm v. St. Paul Ins. Co.*, 2003–NMCA–040, ¶ 21, 133 N.M. 414, 63 P.3d 517. "[O]ther insurance clauses may not be construed to prohibit recovery from more than one policy, at least to the extent of the injured's loss and the second policy's limits[.]" *Morro*, 106 N.M. at 672, 748 P.2d at 515 (internal quotation marks and citation omitted). In *Fickbohm*, we stated that "[w]here application of the offset would result in a limitation of UM/UIM coverage, the offset would not be enforceable." 2003–NMCA–040, ¶ 24, 133 N.M. 414, 63 P.3d 517. We further stated, "[w]henever insureds have UM/UIM coverage less than the amount of their damages, the offset cannot be enforced." *Id.* This Court stated it is "improper to allow an offset against UM/UIM payment which itself did not necessarily represent a full remedy." *Id.* ¶ 17 (citation omitted). We find this reasoning persuasive.

{29} A final reason for not allowing State Farm the contractual offset, and a statutory offset for Twin City, is that to do so would lead to an anomalous result. If we allow State Farm a contractual offset in the amount of liability coverage, $100,000, and allow Twin City the benefit of the statutory offset of $100,000, Jones would be left with a total payment of $500,000, which is less than the amount of UIM purchased for her benefit. Furthermore, allowing the two offsets in this case also leads to the absurd result that Jones would have had a greater recovery if she had been hit by a totally uninsured driver, rather than by an underinsured driver. If she had been hit by an uninsured driver, Jones would receive the entire $100,000 from State Farm in UM coverage because there would be no offset, plus $500,000 from Twin City's UM coverage. We doubt the legislature intended such a result when it enacted the UM statute, and we doubt that our case law interpreting the statute anticipated or would allow such an anomaly. *See Schmick*, 103 N.M. at 221, 704 P.2d at 1097 (striking down an exclusionary clause that would have resulted in the injured insured having a greater recovery if she was hit as a pedestrian, rather than being hit while driving her own insured vehicle.) For the foregoing reasons, we hold that State Farm is not entitled to a contractual offset.

**CONCLUSION**

{30} We summarize our holding as follows: Where a passenger is injured by a third-party tortfeasor who is entirely at fault, and the damages exceed the amount of available UIM coverage from both the primary Class II insurer and the secondary Class I insurer, the primary insurer is entitled to the benefit of the statutory offset for liability payments received. We further hold that State Farm is not entitled to a contractual offset based on the language of the policy, but, as the primary insurer in this case, is entitled to the statutory offset. Therefore, State Farm's net liability to Jones under its UIM provision is zero. We affirm.

{31} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON (concurring in result only) and MICHAEL E. VIGIL, Judges.