# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-006

Filing Date: February 21, 2013

Docket No. 33,622

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Plaintiff-Appellant,

v.

SAFECO INSURANCE COMPANY,
NEW MEXICO MUNICIPAL LEAGUE and
NEW MEXICO SELF INSURERS' FUND,
HALLMARK INSURANCE COMPANY,
formerly PHOENIX INDEMNITY INSURANCE COMPANY and
GEICO GENERAL INSURANCE COMPANY,

      Defendants-Appellees,

and

FARMERS INSURANCE COMPANY OF ARIZONA,

      Defendant-Appellant.

CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS
Sarah M. Singleton, District Judge

Guebert Bruckner, P.C.
Donald George Bruckner
Christopher J. DeLara
Paul Martin Cash
Travis J. White
Albuquerque, NM

for Appellant State Farm Mutual Automobile Insurance Company

Montgomery & Andrews, P.A.
Kevin M. Sexton

1

Albuquerque, NM

Andrew S. Montgomery
Jaime R. Kennedy
Santa Fe, NM

for Appellee Safeco Insurance Company

Hale & Dixon, P.C.
Timothy S. Hale
Albuquerque, NM

for Appellees The New Mexico Municipal League
and The New Mexico Self Insurers' Fund

The Law Offices of Bruce S. McDonald
Bruce S. McDonald
Daniel P. Ulibarri
Albuquerque, NM

for Appellee Hallmark Insurance Company

Simone, Roberts & Weiss, P.A.
David William Frizzell
Albuquerque, NM

for Appellee Geico General Insurance Company

O'Brien & Padilla, P.C.
Daniel J. O'Brien
Albuquerque, NM

Keitha Anne Leonard
Santa Fe, NM

for Defendant-Appellant Farmers Insurance Company of Arizona

**OPINION**

**CHÁVEZ, Justice.**

{1}     The questions certified to us by the Court of Appeals pursuant to NMSA 1978, Section 34-5-14(C) (1972), require us to answer whether the primary or the secondary underinsured motorist (UIM) insurer, if either, should be given the statutory offset for the

tortfeasor's liability coverage. *State Farm Mut. Auto. Ins. Co. v. Safeco Ins. Co.*, No. 31,161, ¶ 5 (N.M. Ct. App. May 11, 2012) (order of certification to the New Mexico Supreme Court). The following hypothetical is intended to give context to our discussion of the relevant case law and resolution of the issue before us.

**{2}** A was a passenger in a vehicle driven by B, which was struck by a vehicle negligently driven by C. A sustains $500,000 in damages. C has liability coverage of $100,000. B has $100,000 in UIM coverage with XYZ Insurance Co. Because A was a passenger in the vehicle insured by XYZ, A is a Class II insured under the XYZ policy, and XYZ is the primary insurer because it insured the vehicle involved in the collision—the car closest to the risk. A also has UIM coverage under three other policies, with policy limits of $100,000, $50,000, and $25,000, respectively. A is a Class I insured under the three policies because A is a named insured in each policy. Because these policies did not insure the vehicle involved in the collision, the insurers who issued the policies are considered to be secondary insurers. Therefore, A has $100,000 in primary UIM coverage, plus $175,000 in secondary UIM coverage, for a total of $275,000 in UIM coverage.

**{3}** The question in this case, as it relates to this hypothetical, is whether XYZ Insurance Co. or the secondary insurers should receive an offset for the $100,000 of liability coverage available from C, the tortfeasor. The Court of Appeals held in *State Farm Mutual Automobile Insurance Co. v. Jones*, 2006-NMCA-060, ¶ 18, 139 N.M. 558, 135 P.3d 1277, that the primary UIM insurer is entitled to the offset. Applying *Jones* to the hypothetical, XYZ does not owe UIM benefits to A because the XYZ coverage equals C's liability coverage. This result is difficult to reconcile with our opinion in *Tarango v. Farmers Insurance Co. of Arizona*, 115 N.M. 225, 227, 849 P.2d 368, 370 (1993), where we held, consistent with the UIM approach we took in *Branchal v. Safeco Insurance Co. of America*, 106 N.M. 70, 71, 738 P.2d 1315, 1316 (1987), that the UIM insurer who insured the car involved in the accident must pay its UIM policy limits before the secondary UIM insurers must pay. Applying *Tarango* to our hypothetical, XYZ must pay its $100,000 before the secondary insurers pay.

**{4}** However, neither *Branchal* nor *Tarango* specifically addressed which insurer, if any, was to be given the offset for the tortfeasor's liability coverage. Instead, as we had done in previous cases, we simply used the offset to define the limits of the insured's UIM recovery. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 223, 704 P.2d 1092, 1099 (1985). The recovery is limited to the lesser of the insured's total damages or the insured's total stacked UIM coverage, minus the tortfeasor's liability coverage. *Id.* at 219, 704 P.2d at 1095. Applying *Schmick* to our hypothetical, A has available to her $175,000 in UIM benefits once C's $100,000 in liability coverage has been deducted from the total stackable UIM coverage of $275,000. We hold, consistent with *Tarango* and its progeny, that once the limits of the insured's UIM recovery are identified, the primary insurer must pay up to its policy limits before secondary UIM insurers are required to pay in proportion to their respective policy limits. Therefore, under our hypothetical, XYZ Insurance Co. pays the first $100,000 in UIM benefits, and the secondary insurers pay the remaining $75,000 in UIM

benefits in proportion to their policy limits. Thus, the short answer to the certified question is that neither the primary nor the secondary insurers are directly awarded the offset because, as we will explain, under existing case law, the offset is applied before any UIM insurer is required to pay UIM benefits.

## BACKGROUND

**{5}** On June 17, 2010, State Farm filed an action against other insurers seeking a declaratory judgment to clarify how UIM statutory offsets should be applied between primary and secondary insurers under New Mexico case law. In its complaint, State Farm described six car accidents, three in which State Farm was the primary UIM insurer because it insured the vehicle involved in the collision, and three in which it was a secondary UIM insurer because its insured was injured while an occupant in someone else's vehicle. State Farm filed a motion for summary judgment, which prompted cross-motions for summary judgment by the defendant insurance companies. On February 15, 2011, the district court entered a final judgment declaring that the holdings in *Tarango* and *Jones* "cannot be reconciled" and "cannot both be valid, current expressions of New Mexico law regarding the application of the statutory offset between primary versus secondary UIM coverages." However, the district court then proceeded to explain that statutory offsets were not specifically discussed in *Tarango*, and the question presented in *Jones*—which insurer gets the offset—was not before the Supreme Court in *Tarango*. Therefore, the district court concluded that *Jones* controlled, and the primary insurer was entitled to the statutory offset.

**{6}** Applying *Jones*, the district court found against State Farm on Counts I through III, where it was the secondary insurer, and in favor of State Farm on Counts IV through VI, where it was the primary insurer. State Farm appealed to the Court of Appeals, which certified two questions to us. *State Farm*, No. 31,161, ¶ 5. The first question is whether the Court of Appeals' opinion in *Jones* conflicts with this Court's opinion in *Tarango*. *State Farm*, No. 31,161, ¶ 5. The second is "whether the statutory UIM offset should be applied initially in favor of the primary or secondary insurer." *Id.* We now address these questions, applying a de novo standard of review. *Salas v. Mountain States Mut. Cas. Co.*, 2009-NMSC-005, ¶ 12, 145 N.M. 542, 202 P.3d 801 (we review a district court's grant of summary judgment de novo).

## DISCUSSION

**{7}** The New Mexico uninsured motorist statute, NMSA 1978, § 66-5-301 (1983), is implicated when an insured is injured in an accident and the tortfeasor is either uninsured or underinsured. *See Schmick*, 103 N.M. at 219, 704 P.2d at 1095 (describing the broad objective and limitations of the statute). We are only concerned with underinsured motorists in this case. An "underinsured motorist" is defined as "an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage." Section 66-5-301(B).

4

The policy reason for enacting UIM legislation is "to put an injured insured in the same position he would have been in had the tortfeasor had liability coverage in an amount equal to the uninsured/underinsured motorist protection purchased for the insured's benefit." *Schmick*, 103 N.M. at 219, 704 P.2d at 1095.

**{8}** Therefore, in evaluating whether an injured insured has a UIM claim, one must determine both the tortfeasor's liability limits and the insured's total UIM coverage, which may include multiple stacked policies. "The term 'stacking' refers to an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until all damages either are satisfied or the total policy limits are exhausted." *Morro v. Farmers Ins. Grp.*, 106 N.M. 669, 670, 748 P.2d 512, 513 (1988).

**{9}** Whether multiple policies may be stacked requires an analysis of whether the injured insured is a Class I or a Class II insured under the applicable policies. Class I insureds include "the named insured, the spouse, and those relatives that reside in the household while Class II insureds are insured by virtue of their passenger status in an insured vehicle." *Tarango*, 115 N.M. at 226, 849 P.2d. at 369. All UIM coverage for a Class I insured may be stacked. *Morro*, 106 N.M. at 671, 748 P.2d at 514 (citing *Schmick*, 103 N.M. at 220, 704 P.2d at 1096). When the injured insured is a Class II insured under a policy insuring the vehicle involved in the accident, the insured may stack that policy with any policy under which he or she is a Class I insured. *Morro*, 106 N.M. at 672, 748 P.2d at 515. If the total of the stackable coverage exceeds the tortfeasor's liability limits, the tortfeasor is an underinsured motorist. *Schmick*, 103 N.M. at 219, 704 P.2d at 1095. Assuming the insured's damages exceed the limits of the tortfeasor's liability coverage, the insured may pursue a claim against the UIM insurers to the extent of the insured's damages or available UIM policy limits, whichever is less. *Id.* at 222, 704 P.2d at 1098.

**{10}** However, when multiple UIM policies are available to the injured insured, our case law has distinguished between primary and secondary UIM insurers. The primary UIM insurer is the insurer that issued the policy on the vehicle involved in the collision that gave rise to the insured's injuries. *Branchal*, 106 N.M. at 71, 738 P.2d at 1316. The insured's remaining UIM insurers are secondary; they involve policies under which the insured is a Class I insured. *See Lopez v. Found. Reserve Ins. Co.*, 98 N.M. 166, 172, 646 P.2d 1230, 1236 (1982) (refusing to allow recovery by a Class II injured passenger from a policy covering the Class I insured driver's second vehicle, which had not been involved in the accident at issue), *holding modified on other grounds by Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶ 1, 135 N.M. 681, 92 P.3d 1255.

**{11}** The status of a UIM insurer as primary or secondary determines which insurer must be the first to pay UIM benefits. In *Tarango*, we held that the primary UIM insurer had to pay its policy limits before secondary UIM insurers have to pay. 115 N.M. at 227, 849 P.2d at 370. The facts of *Tarango* help to explain our holding. Ms. Tarango was seriously injured as a passenger in a car owned and driven by Ms. Alarcon when it was rear-ended by a car driven by Mr. Martin. *Id.* at 226, 849 P.2d at 369. Tarango received $25,000 from

Martin's liability insurer, which represented Martin's liability policy limits. *Id.* Tarango made a claim against Alarcon's UIM policy with Allstate as a Class II insured. *Id.* Tarango also had two UIM policies with Farmers as a Class I insured. *Id.* All three UIM policies had $25,000 policy limits. *Id.*

{12}    The issue of Tarango's damages was arbitrated pursuant to arbitration clauses in all of the UIM policies. *Id.* The arbitrators found that Tarango's damages equaled $40,000, and after deducting the $25,000 already paid by Martin's liability insurer, they entered a UIM award of $15,000. *Id.* We described the sole issue before us in *Tarango* as whether the Class II insurer was responsible for paying the entire $15,000 of UIM benefits, or whether the Class I and Class II insurers had to pay a prorated portion of the $15,000. *Id.* at 225, 849 P.2d at 368. Allstate, as the Class II insurer, argued that our holding in *Morro*, which affirmed the district court's decision to prorate the payment of a UIM award among Class I and Class II UIM insurers, required us to prorate. *Tarango*, 115 N.M. at 226, 849 P.2d at 369.

{13}    Although we rejected the approach taken in *Morro*, largely because the Class I UIM insurer did not object to the prorated credit given by the district court to the Class II insurer in that case, *Tarango*, 115 N.M. at 226, 849 P.2d at 369, the discussion in *Morro* is instructive. Morro was seriously injured when a tortfeasor struck her while she was loading groceries into her daughter's automobile. *Morro*, 106 N.M. at 669-70, 748 P.2d at 512-13. The tortfeasor had $25,000 of liability coverage with Farmers Insurance of Arizona. *Id.* at 670, 748 P.2d at 513. Morro's daughter had UIM coverage with Foundation Reserve for $25,000, and Morro herself had two $25,000 UIM policies with Farmers Insurance. *Id.* Morro received the tortfeasor's $25,000 in liability limits and later argued that she was entitled to stack the Foundation Reserve policy with her two Farmer's policies, giving her $75,000 in uninsured motorist benefits and making the tortfeasor an underinsured motorist. *Id.* Morro's damages were presumed to equal $75,000, and because the tortfeasor had paid $25,000, the ultimate question we addressed was which UIM carrier was entitled to credit for the tortfeasor's $25,000 payment. *Id.* at 672-73, 748 P.2d at 515-16. Foundation Reserve argued that its liability should be offset by the tortfeasor's coverage, and that because the tortfeasor had $25,000 in coverage, which equaled Foundation's UIM policy limit, Foundation did not owe Morro any UIM benefits. *Id.* at 670, 672-73, 748 P.2d at 513, 515-16. Alternatively, Foundation argued that because there were two UIM insurers, the credit for the tortfeasor's liability insurance should be divided equally between the two insurance companies. *Id.* at 672, 748 P.2d at 515. We rejected both arguments and affirmed the district court's decision to prorate the offset among the three policies. *Id.* at 673, 748 P.2d at 516.

{14}    If the Court of Appeals' holding in *Jones* had preceded *Morro* and *Tarango*, the insurer who insured the car involved in each collision (i.e., the primary insurer) would have escaped liability. The *Jones* court accepted the exact argument that we rejected when Foundation Reserve raised it in *Morro*. *Compare Jones*, 2006-NMCA-060, ¶¶ 3, 19 (the Court of Appeals accepted the primary insurer's argument that because it was entitled to the

6

offset, its liability was reduced to zero), *with Morro*, 106 N.M. at 670, 672-73, 748 P.2d at 513, 515-16 (rejecting primary insurer's argument that it was not liable for any amount of UIM coverage because its liability was entirely offset by the tortfeasor's liability coverage). We agree with State Farm's argument that we were not asked to distinguish between primary and secondary insurers in *Morro*. However, when we were asked to do so, we made it clear that the primary UIM insurer must pay its policy limits before secondary UIM insurers are required to pay benefits. *Tarango*, 115 N.M. at 227, 849 P.2d at 370. Applying this principle in *Tarango*, we held that the primary UIM insurer, which had a policy limit equal to the tortfeasor's liability policy limit, had to pay UIM benefits. *Id.* at 226-27, 849 P.2d at 369-70. Had we applied the principle announced in *Jones*—that the primary insurer should be the first to receive the statutory offset—to the facts in *Tarango*, the result would have been different; the primary insurer would not have owed any UIM benefits and the UIM payment obligation would have shifted entirely to the secondary UIM insurers.

**{15}**    To ask which insurer is entitled to the statutory offset is to over-think the issue of offsets and to ignore the principled pragmatism of the jurisprudence that declared the need for an offset in the first place. As early as 1985, we interpreted the UIM statute as providing a formula for computing whether a tortfeasor is an underinsured motorist and by what amount. *Schmick*, 103 N.M. at 222, 704 P.2d at 1098. We stated that

> [t]he formula is the criterion to be used in determining underinsurance benefits due and it defines the parameters within which recoveries must stay. Therefore, an insured collects from his underinsured motorist carrier the difference between his uninsured motorist coverage and the tortfeasor's liability coverage or the difference between his damages and the tortfeasor's liability coverage, whichever is less.

*Id.* The offset is built into the formula that limits the insured's recovery of UIM benefits. Because the tortfeasor's liability limits are taken into consideration, any UIM insurer, whether primary or secondary, should not be concerned that the insured will receive more compensation than what is permitted by the UIM statute as interpreted by case law. We see no reason to depart from an analysis that has survived a quarter of a century.

**{16}**    We recognize that we denied certiorari in *Jones*. 2006-NMCA-060, *certs. denied*, 2006-NMCERT-005, 139 N.M. 568, 136 P.3d 569 (Nos. 29,781 & 29,779, May 25, 2006). Because we did so, *Jones* was indeed the precedent to be followed by the lower courts. We thank the Court of Appeals, and particularly Judge Michael Bustamante, who authored the *Jones* opinion and signed the order certifying the questions to us in this case, for calling our attention to this issue once again. It appears that courts have struggled to reconcile the *Jones* and *Tarango* opinions. Indeed, all of the insurers in this case have asked us to clarify the state of the law with respect to statutory offsets and have urged us to keep the solution simple. Although we find simplicity in the approaches taken by the *Morro* and *Jones* courts, we also find simplicity in the approach taken in *Tarango*. In *Tarango*, we rejected a pro rata approach and held that the primary UIM insurer must exhaust its policy limits before

secondary UIM insurers have to pay UIM benefits, reasoning that the primary insurer contracted to cover occupants in its insured's vehicle who are injured by uninsured or underinsured motorists, and collected a premium specifically for doing so. 115 N.M. at 227, 849 P.2d at 370.

{17}    Just as the limits on what an insured may recover in UIM benefits have not changed, neither has the rationale for holding that the primary UIM insurer must first exhaust its policy limits before secondary UIM insurers have to pay UIM benefits.  To award the statutory offset to the primary insurer first, as the Court of Appeals did in *Jones*, would undermine our holdings in *Branchal*, *Tarango*, and *Morro*.  This approach would give primary insurers the benefit of the offset—sometimes entirely absolving their liability—despite the fact that the primary insurer is the closest to the risk.  We adhere to our statement in *Tarango* that

> [I]t is the better and more reasonable rule to require the insurer of the vehicle in which the injured party was riding as a passenger, rather than as an owner or driver, to first pay un[der]insured motorist benefits before the injured party's insurer may be required to pay under its un[der]insured motorist coverage.

115 N.M. at 226-27, 849 P.2d at 369-70 (second and third alterations added) (quoting *Branchal*, 106 N.M. at 70, 738 P.2d at 1315).  To hold as the *Jones* court did would potentially require a secondary insurer to pay more than its proportionate share, even though its insured's vehicle was not involved in the accident—a result we specifically rejected in *Tarango*.  *See* 115 N.M. at 227, 849 P.2d at 370 ("The underinsured liability must first be assessed against [the primary insurer] to the limits of its policy before demand can be made upon [the secondary insurer]. . . .  To allow proration . . . would require [the secondary insurer] to pay twice as much under its policies even though its insured's vehicle was not involved in the collision.").  Accordingly, we overrule the Court of Appeals' opinion in *Jones*, 2006-NMCA-060, to the extent that it is inconsistent with our holding in this case.

{18}    Applied to the six accidents in the present case, the primary UIM insurer shall exhaust its policy limits before the secondary insurers must pay UIM benefits in an amount proportionate to their respective policy limits.  Because we do not know the number of secondary policies or the policy limits for each secondary policy, we cannot specify the allocation in the various cases brought by State Farm.  However, to illustrate our ruling we return to the hypothetical we announced at the beginning of this opinion.  Assume that the insured has $500,000 in damages.  The tortfeasor has $100,000 in liability coverage.  The primary UIM insurer has $100,000 in UIM benefits.  There are three secondary insurers, one with $100,000 in UIM benefits, one with $50,000 in UIM benefits, and the last with $25,000 in UIM benefits.  The tortfeasor is an underinsured motorist because the injured insured has UIM benefits totaling $275,000, which is $175,000 more in UIM coverage than the tortfeasor has in liability coverage.

8

**{19}** The UIM benefits due to the injured insured are $175,000. Although the insured sustained $500,000 in damages, the insured is limited to recovering in UIM benefits the difference between the insured's total UIM coverage and the tortfeasor's liability coverage. The primary UIM insurer pays its entire $100,000, leaving the secondary UIM insurers obligated to pay a prorated portion of $75,000. One secondary insurer pays $42,857.14, which is 4/7ths (100,000/175,000) of $75,000; one pays $21,428.57, which is 2/7ths (50,000/175,000) of $75,000; and the remaining secondary insurer pays $10,714.29, which is 1/7th (25,000/175,000) of $75,000. In no case will the insured receive more than the limits of the insured's UIM coverage minus the tortfeasor's liability payment or more than the insured's damages minus the tortfeasor's liability payment, whichever is less.

**CONCLUSION**

**{20}** The answers to the questions certified to us by the Court of Appeals are as follows. With respect to the first question: Yes, the Court of Appeals' holding in *Jones* conflicts with our opinion in *Tarango*. With respect to the second question: Consistent with our holding in *Tarango*, the primary UIM insurer must pay up to its policy limits before a secondary UIM insurer is required to pay UIM benefits. The statutory offset for a tortfeasor's liability coverage is contained within the formula we announced in *Schmick* for computing the underinsurance benefits due an insured.

**{21}   IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

 **WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
 **BARBARA J. VIGIL, Justice**

**Topic Index for *State Farm. Mut. Auto Ins. Co. v. Safeco Ins. Co.*, No. 33,622**

**APPEAL AND ERROR**
Certification

Standard of Review

**CIVIL PROCEDURE**
Certification

**INSURANCE**
Motor Vehicle Insurance
Primary, Secondary, or Other Coverage
Stacking
Uninsured or Underinsured Motorist